WASHINGTON RIDER *vs.* ADDISON B. RIELY AND OTHERS.

EVIDENCE: THE STATUTE OF FRAUDS does not apply to a case, where a complainant seeks to compel a defendant to pay his own debt to the party to whom his creditor has assigned it; but to entitle the complainant to relief, he must prove that the assignment was made, and that the defendant had notice of it. This case is to be distinguished from the case where an attempt is made to charge a person with the debt of another, which can only be done in writing, and upon the consideration expressed in the writing itself.

PRACTICE IN EQUITY: ANSWER AND EXCEPTIONS TO ANSWER.—A defendant who submits to answer, must answer fully and explicitly, and may be pressed by exceptions until he thus answers; and a complainant who objects to an answer because it is not sufficiently full and explicit, must have recourse to this method to bring out what is concealed or kept back.

Where an answer explicitly denies the fact upon which the equity of the complainant's claim for relief rests, its weight and effect can only be overthrown by two witnesses, or one with pregnant circumstances.

APPEAL from the Court of Chancery.

The bill of complaint in this cause was filed on the 7th of January 1847, by the appellant against the appellees, on the equity side of Baltimore County Court. Separate answers were filed by the respondents, Riely and Horsey, and testimony was taken under a commission

and returned.    Afterwards, upon the suggestion and affidavit of the complainant, and order of said Court, the proceedings were upon the 7th of June 1848, removed to the High Court of Chancery.    The state of case, as disclosed by the pleadings and evidence in the cause, is fully set forth in the following opinion of the late Chancellor (Johnson.)

"This case, which originated in a bill filed on the equity side of Baltimore County Court, has been argued by counsel, and fully examined and carefully considered by the Court.

"The defendant Riely has filed exceptions to the averments of the bill, and also upon the ground of the absence of other averments, supposed to be essential to the complainant's right to the relief prayed by him.    But without deciding upon these exceptions, and assuming the bill to be unexceptionable in its structure, I shall proceed very briefly to examine the complainant's right to a decree, upon the merits of the case, as disclosed by the evidence and pleadings.

"If the case presented by the bill be such as the complainant's counsel insists it is, and as I shall assume it to be, the statute of frauds relied upon in the answer of Riely, is no defence.    It is not upon this assumption,—an attempt to charge the defendant with the debt of another,—which can only be done in writing, and upon a consideration expressed in the writing itself, but it is an effort to make the defendant pay money due from him to one person, to another to whom his alleged creditor is indebted, upon the ground of an equitable assignment by his creditor to such third person.    The defendant, therefore, upon the theory of this bill, as understood by the complainant's counsel, is not called upon to pay the debt of a third person, but to pay his own debt to the party, to whom his creditor has assigned it; and if such assign-

ment was made, and duly notified to the defendant, it may be, that under the circumstances of this case, a Court of Equity would be competent to grant relief. 1 *Galli-son's Reports*, 630.

"It appears by the pleadings and proofs in this case, that on the 20th of December 1844, the defendant Riely entered into a contract in writing with his co-defendant, Samuel Hess, by which the latter was to build for Riely a brick house, in the City of Baltimore, the plan of which is described in the contract, for the sum of $6,600, of which $600 was to be paid in cash, $3,000 in goods, and $3,000 in the notes of Riely, to be divided into three payments of $1,000 each, dated when the house should be completed, and payable without interest, at one, two, and three years, from date.

"It is also shown, that Hess contracted with the complainant, Rider, for the brick for this house, and for another house, which he was building for Mr. Leche, and that on the 2nd of August 1845, there was due from Hess to the complainant, for brick furnished by him for the building of these two houses, the sum of $3,021.10. It further appears by an account admitted to be correct, that the defendant Riely, from the 12th of February 1845, to the 30th of April 1846, paid to Hess, in cash, in person, and upon his order, and in merchandise, $6,835.66,— exceeding by some hundred dollars, the sum to be paid for the house; and that on the 9th of March, 1846, when Hess petitioned for the benefit of the insolvent laws, the house was unfinished, and that the defendant Riely was subjected to an expense of about $800 to complete it.

"The bill in this case charges, that for the bricks to be furnished by the complainant to Hess, the defendant, was (and to the extent of at least $3,000, through said Riely,) to be paid by said Hess, under said contract, at a certain price, &c.; and that Hess, for bricks furnished under the contract, being indebted to the complainant in a sum

exceeding $2,000, on or about the 1st of July 1845, he, the complainant applied to him for payment, at least in part, of this demand, or for security for payment.   That thereupon, Hess, as by him expressly stipulated at the time he contracted with the complainant for the bricks, and as part of said contract, agreed with the complainant, that in pursuance of said original contract, he should receive, and the complainant assented, as by him originally agreed, to accept payment to the extent of $3,000 of his demand for bricks furnished, and yet to be furnished from Riely, out of, and on account of the sum for which Riely was liable and indebted to Hess for said building.

"That at that time, and when the complainant reminded Riely of said agreement for the complainant's payment, there was an amount due, and becoming due, and payable for the building, from Riely to Hess, exceeding the amount of the complainant's claim against Hess, provided by him as before stated to be paid.   That the complainant promptly thereafter notified Riely thereof, and requested and required him to pay and provide for the complainant's claim, out of the sum claimable as aforesaid from him, the defendant, to Hess.   That Hess, in like manner, notified Riely, and directed him to pay the complainant's claim, which he promised to do accordingly, out of said liability to Hess, as the same should mature, and become due, to wit, in his three promissory notes, each for $1,000, payable in one, two, and three years, respectively, from the 1st of November 1845.   And the bill prays for relief, commensurate with the case thus stated.

"In order to make out this case, therefore, two things must be proved or admitted:—

"First. That Hess did contract and agree to pay or secure the complainant, in the way alleged by him.

"Secondly. That the defendant Riely had due notice thereof, before he had paid to Hess, or upon his order,

upon his contract with him, the amount thereby stipulated to be paid.

"It is said that the answer of Riely has not met the allegations of this bill, in that full, explicit, and frank manner, which is required to give the defendant the benefit of a direct denial of the allegations, upon which the complainant's equity is supposed to rest; and that therefore, the well established principle, that two witnesses, or one witness with corroborating circumstances, are necessary to overcome an answer responsive to the bill, should not be applied to this case. It may be remarked, however, that if the complainant had reason to believe that the defendant had practised too much reserve in his answer, and that something was kept back, which if disclosed, would have assisted the complainant's case, he would have had recourse to the usual method to bring it out,—the rule being, that a defendant who submits to answer, must answer fully and explicitly, and that he may be pressed by exceptions until he thus answers.

"But as I understand this answer, it does meet, and deny fully and unequivocally, the allegation, that he was notified of the agreement between the complainant and Hess, or that he knew of the existence of any such agreement. He denies in the plainest terms that could be employed, that he ever was informed of, or reminded, of any such agreement, or that he ever was notified or requested, either by the complainant or Hess, 'to pay or provide for the claim of the complainant on said Hess, in any manner whatever.' The answer admits, that some time after Hess had applied for the benefit of the insolvent laws, the complainant called upon the defendant, and asked him about the notes spoken of, as though he believed he had a claim upon them, when the defendant told him he did not know him in the transaction, and the conversation ended. But this interview, even it would

Rider *vs.* Riely et al.

amount to notice of an assignment, which might well be doubted, was after the defendant had paid to Hess, or upon his order, an amount exceeding his claim for building the house,—though for the reason already stated, he was not entitled to be paid the entire sum.

"Being then of opinion, that the weight and effect of this answer can only be overthrown by two witnesses, or one with pregnant circumstances, let us for a moment look at the evidence and circumstances, to see if such proof can be found.

"The only witness, whose proof is relied on to establish the fact of notice, is Samuel Hess, the party with whom the defendant Riely contracted for building the house. It is not deemed necessary to examine very minutely the testimony of this witness for the purpose of ascertaining whether it is sufficiently clear and explicit, to fix upon the defendant Riely the consequence of notice of the alleged assignment. Because, assuming that it sustains the plaintiff's view of it, it is not only destitute of any corroborating circumstances, but there are circumstances of the most pregnant character opposed to it.

"According to the testimony of this witness, the defendant, in the spring of 1845, about the time the house was commenced, was informed that Hess had purchased the brick from the complainant, on the security of the three notes, which the defendant was to deliver to Hess on the completing of the houses, and that subsequently in July of the same year, in another conversation between the witness and the defendant, upon the subject, and when the witness had called upon the defendant, for the purpose of getting some money, the defendant told him, the complainant had been to see him upon the subject, and that he, the defendant, told the complainant, 'it was all right, and that the notes were still in his hands, and that he intended to secure them for Rider,' 'and that he could not let the witness have money on that account.'

69    v. 22

"Now, if this is true, it is difficult to assign a reason for the large subsequent advances made by the defendant to the witness. Why should he, in July 1842, refuse to pay him money because of the obligation to secure the notes for the complainant, and yet, after that period, make him large advances in cash, to an extent, when added to the payments previously made, exceeding the whole sum to be paid for the house? The endorsement upon the contract of the 20th of December 1844, which appears to be ante-dated, furnishes, in my opinion, no sufficient explanation of a course of conduct, so much at variance with that which a prudent man would have pursued, in similar circumstances. That endorsement, which, according to the evidence of Hess, was made in July or August 1845, affords, I think, very strong evidence that Hess, by whom it was signed, at that time, did not think that the notes were to be reserved for the complainant.

"On the contrary, it is manifest, he supposed the money to be secured by the notes, was still at his disposal, and he desired the payments should be anticipated, if necessary to enable him to complete his contract. With what propriety could he agree with the defendant, for advancing him money on these notes, if he had stipulated with the complainant, that he should have them! And is it all likely, that the defendant would have made such advances, and then exposed himself to the peril of serious loss, if he had been notified of the assignment of these notes to the complainant?

"I cannot bring myself to think so. Here, then, is the case of an answer, explicitly denying the fact, upon which the equity of the complainant's claim for relief rests. This answer is contradicted by one witness, but the conduct of that witness, and the conduct of the defendant, are strong to create doubt of the accuracy of the statement of the witness. And therefore, giving the answer the effect to which it is entitled, it follows, that

the plaintiff has failed to make out a case for relief, and his bill must be dismissed."

From the decree passed on the 14th of January 1850, in conformity with the foregoing opinion, the complainant appealed.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough, Cochran, and Weisel, J.

*Charles F. Mayer,* for the appellant.

The plea of the statute of frauds cannot avail in this cause, because the bill does not charge the appellee, Riely, on an undertaking for another's debt; but in effect on an assignment of another's claim against him. So the decree below determines; and the point is settled in England, as will be seen in *Pittman on Sureties,* 12, (40 *Law Lib.*) No objection is made by the appellee to the equity jurisdiction in such case; but that, here, is clear for our case, where there is no legal priority, as to the claim whose benefit we seek, between us and the defendant. *Reimsdyk vs. Kane et al.,* 1 *Gallis. R.,* 630.

The question to be passed on by this Court is, merely, how far the answer is responsive to the bill, and denies it positively, so as to stand decisive, unless overthrown by the one witness (Hess) against it, and by circumstances. It cannot be said that an answer which is not positively and frankly a denial, but which speaks evasively and partially only, is to be treated for purpose of evidence as if it were full and positive as a denial. If the answer of Riely then is not such a denial, the objection to its weight as testimony is therefore open to us without exceptions, on that score, to the answer; to make which is, in all cases, a consideration of expediency, and not a matter of duty. The Chancellor's intimations to the reverse of this view, are surely not sustainable on sound principles of pleading in equity.

No counsel appeared for the appellees.

COCHRAN, C. J., delivered the opinion of this Court.

This case was submitted at December term 1852, under an agreement that the points and notes of argument on both sides should be filed during the term. The appellant filed his argument in conformity with this agreement, although none has yet been furnished by the appellees. We think, under the circumstances, that longer delay is unnecessary, and have therefore carefully examined the record and argument of the appellant, with the view of making a final disposition of the appeal. Only two questions appear to have been presented in the case; the first of which relates to the effect of the statute of frauds, pleaded in bar to the appellant's claim; and the second to the sufficiency of the answer to put the appellant to strict proof of the material matters alleged in his bill. Both of these questions were fully considered by the late Chancellor in his opinion, and for the reasons there stated, we think the decree passed in conformity therewith, should not be disturbed. The decree appealed from will therefore be affirmed with costs to the appellees.

*Decree affirmed.*

(Decided March 15th 1865.)