ANDREW BEASTEN and ESMA R. BOMEN *vs.* HELENE H. HENDRICKSON, by her husband and next friend, JOHN S. HENDRICKSON.

*Parol agreement to pay the Debt of another—Want of Consideration—Statute of Frauds.*

In an action by a *féme covert*, suing by next friend, against two defendants upon a promissory note, B., one of the defendants, set up the defence that being an endorser on a note of the plaintiff's husband, the plaintiff, prior to the maturity of the note sued on, and in allusion to his apprehended liability as such endorser, had said to him, "you hold on to that money, and I will see it paid out of that money which you hold, if J., (her husband) don't pay it;" that B. went away satisfied and when the husband's note became due, B. paid it out of the money due by him on the note to the plaintiff. HELD :

That conceding this agreement to have been made, there was no consideration to support it, and it was a promise to pay the debt of another, not reduced to writing, and therefore not binding upon the plaintiff.

APPEAL from the Circuit Court for Cecil County.

The plaintiff, a *féme covert,* by her husband and next friend, sued the defendants upon their promissory note made in her favor. In addition to the three general pleas of "never indebted," "did not promise as alleged," and "payment," the defendant Beasten pleaded the following special pleas :

4th. That the money sued for was placed in the defendant's hands upon an agreement between the plaintiff and the defendant, that the defendant should have a lien upon it as a security for the payment of a certain note which the defendant had endorsed for the husband of the plaintiff, and the husband has never paid said note.

39                    v. 44.

5th. That the money sued for was, by agreement between the plaintiff and the defendant, constituted a fund, and specifically appropriated as a security to remain, and did in consequence. thereof remain, in the hands of the defendant, on which he should have a lien in case the plaintiff's husband should fail to pay a certain promissory note which the defendant had endorsed, and the plaintiff's husband failed to pay said note which the defendant had endorsed, and the defendant was compelled to pay the same.

*Exception.*—At the trial the plaintiff produced and read to the jury the promissory note declared on, the signatures to which were admitted. And then proved by the plaintiff as a witness sworn in her own behalf, that she is a married woman, the wife of John S. Hendrickson, who resides in the State of New Jersey, and she resides in the City of Philadelphia. That in 1868 she resided with her husband at Chesapeake City, Cecil County, where he was engaged in store-keeping; that in 1868 the defendant applied to her to borrow some money which he said he had understood she had to invest, and she loaned to him the money and took therefor his promissory note for the amount thereof; that in June, 1871, the note originally taken was given up and cancelled, and the note now sued on substituted therefor; that in 1872 her husband having failed in business, and she and himself being about to leave the State, she placed the note in the National Bank of Elkton for collection; that she and her husband left the State before the note was due; that she had never received herself any interest on any of the notes, but that the interest on the original note was paid to her husband, as also one year's interest on the note now sued on, with her consent, and by him paid over to her; that no part of the principal had ever been paid.

The plaintiff here rested her case.

The defendant, Beasten, being sworn in his own behalf, proved that about 1868, he applied to the husband of the

plaintiff for a loan, and after some negotiation with him obtained the amount specified in the first promissory note, which he believes was the same amount as that specified in the note sued on ; that he had no conversation with Mrs. Hendrickson in regard to the loan of money, and did not know either at that time, or at the time of the giving of the note now sued on, that she had any claim to the money ; that he did not know to whom either of the notes was made payable or who drew the check upon which he received the money, as he could not read ; that the check was handed to him by the plaintiff's husband with whom was the negotiation ; that in 1872, the plaintiff and her husband being about to leave the State with whatever property they had, and her husband being largely indebted and not having provided for the payment of his debts, and he the witness having endorsed a note for the plaintiff's husband for the sum of $400.00, which was not then due, became alarmed and went to see the plaintiff to make some arrangements for settling with her, (as he had heard a short time before that the amount borrowed on the promissory note now sued on belonged to her,) and to secure himself from loss on account of the said promissory note which he had endorsed for her husband ; after some conversation about the promissory note now sued on, which she claimed as her property, witness said to Mrs. Hendrickson, " I am endorser on John's note which will be due in a short time, and he is going away, and if he don't pay that note when it becomes due, it will leave me in a critical condition, for they will come on me for the money, and won't go to hunt him." Mrs. Hendrickson then said, " you hold on to that money, and I will see it paid out of that money which you hold, if John don't pay it."

That witness was then satisfied and went away, and the plaintiff and her husband shortly left the State, leaving no property behind them ; and afterwards when the note

upon which he was endorser for plaintiff's husband be-
came due, he paid it out of the money which he owed to
Mrs. Hendrickson for the note sued on, thinking he had
her authority for so doing ; that he never heard from Mrs.
Hendrickson, from her husband, or from the promissory
note now sued on, until he was served with a summons in
this case.

Mrs. Hendrickson, on re-examination, stated that the
money loaned to Beasten was her separate estate received
from the administratrix of her father's estate ; that it had
been placed in the National Bank of Elkton to her credit ;
that she signed the check in his favor ; that the money
was advanced to him upon her check, and that the first
promissory note taken from Beasten was made payable
to herself, and similar to the one on which this suit is
founded ; that in 1871, fearing the first note would be
outlawed, she took this renewal ; she stated further that
she had never had any conversation with Mr. Beasten, as
testified to by him, and denied that the subject of the loan
was ever mentioned to him by her after the time the note
now sued on bears date ; that she had never said to him
to hold on to her money for the purpose of paying the
note of her husband on which Beasten was endorser, and
in fact, had no conversation with him on the subject.

Whereupon the plaintiff offered the following prayer,
which was conceded by the defendant :

That upon proof of due execution of the note sued on
in this case, the plaintiff is *prima facie* entitled to recover,
and the burden of proof is upon the defendant to show
payment or satisfaction of said note.

And the defendant offered the following prayers :

1. If the jury believe that the principal of the note
sued on has been paid, or any portion thereof has been
paid, then the defendant is entitled to a credit to the
extent of such payment, if any.

2. If the jury believe that the defendant had endorsed
a note for the plaintiff's husband, and before the said

note became due, the defendant went to the plaintiff for the purpose of making arrangements for the payment of the said note, and the plaintiff authorized the defendant, out of the money due her on the note now sued on, to pay the note given by her husband, upon which the defendant was endorser, provided her husband did not pay the same; and shall further believe that her husband did not pay said note, and that the defendant, out of the money due to the plaintiff on the note now sued on, paid said note on which he was endorser, before any revocation of authority by the plaintiff, then the defendant is entitled to a credit to the extent of such payment.

3. If the jury believe that the defendant had endorsed a note for the plaintiff's husband, and that the plaintiff's husband was about removing from the State without leaving any property out of which his debts due or to become due could be realized, and that the defendant became alarmed for his safety by such contemplated removal from the State, and that he went to the plaintiff and stated his fears, and that the plaintiff, for the purpose of allaying such fears and giving him security for the repayment to himself of any money he should be compelled to pay on her husband's account, by reason of his said endorsement, said to him, "you hold on to that money," meaning the money due on the note sued on, (if the jury so believe,) "and I will see the note" (meaning the note Beasten had endorsed for her husband, if they so believe,) "paid out of that money," (being the money now sued for, if they so believe,) and shall further believe that the plaintiff's husband failed to pay said note, and that the defendant was compelled to pay it, that then the defendant has the right to retain, out of the money now sued for, so much as will indemnify him the amount he was compelled to pay on said note on which he was endorser, provided the jury shall believe that Mrs. Hendrickson, (the plaintiff,) intended by her remarks addressed to the defendant, to give

him a lien on the money now sued for, and intended that he should hold said money as a security.

The Court (WICKES and STUMP, J.,) refused to grant the prayers offered by the defendant, but granted a substitute for the first prayer, as follows :

If the jury believe from the evidence that the defendant made any payments on the note sued on, to the plaintiff or her husband, then the defendant is entitled to a credit on said note to the amount of such payments.

The defendants excepted. The jury rendered their verdict for the plaintiff, and judgment was entered accordingly. The defendants appealed.

The cause was argued before BARTOL, C. J., BRENT, ALVEY and ROBINSON, J.

*Albert Constable,* for the appellants.

Mrs. Hendrickson, by the remarks addressed to him, authorized Beasten out of the money he held of her's, to pay the note on which he was surety for her husband, and he having done so, before any revocation of that authority, cannot now be called on to pay it to her. It was payment.

The conversation was an agreement for a lien. The money in Beasten's hands was constituted a fund, and specifically appropriated to that debt. *Jones vs. Starky,* 16 *Jurist,* 510 ; *Jackson vs. Cummings,* 5 *M. & W.,* 341 ; *Richards vs. Lymons,* 8 *Q. B.,* 90.

If the jury had found the facts stated in the defendants' third prayer, there could be no doubt of the soundness of the position, *if it be possible to create a lien by agreement.* There was an equitable assignment. *Watson vs. Duke of Wellington,* 1 *Russ. & Mylne,* 602. The objection in this last case to the assignment was, that the person, in whose hands the fund was, had not *assented,* and besides it was clear from the letter that a *discretion* was left in that person to pay or not.

The agreement is not obnoxious to the Statute of Frauds, as it was an *executed,* not an *executory* agreement. *Lavery vs. Turley,* 6 *H. & N.,* 239; *Knowlman vs. Bluett,* (*L. R.,*) 9 *Excheq.,* 307.

*C. McCullough,* for the appellee.

The agreement or promise set up in this case, cannot avail the defendants, be it ever so clearly proven, because it is entirely without consideration, and therefore *nudum pactum ;* and moreover, not having been reduced to writing, it is inoperative under the Statute of Frauds. It is hardly necessary to refer to any authorities in support of these positions, the principles involved have been so frequently and recently recognized by this Court.

It has been repeatedly held, that it is essential to the validity of every parol agreement, whether verbal or written, that it be founded upon a sufficient consideration, otherwise it is considered in law as *nudum pactum,* and cannot be enforced. *Wyman vs. Gray,* 7 *H. & J.,* 415; *Elliott vs. Giese,* 7 *H. & J.,* 457; *Nabb vs. Koontz,* 17 *Md.,* 283.

A person cannot be charged upon a promise to pay the debt of another, except upon an agreement in writing, and upon a consideration expressed in the writing itself. *Wain vs. Warlters,* 5 *East.,* 10; *Rider vs. Riley,* 22 *Md.,* 540; *Hutton vs. Padgett,* 26 *Md.,* 231; *Thomas vs. Delphy,* 33 *Md.,* 373; *Frank vs. Miller,* 38 *Md.,* 450.

Robinson, J., delivered the opinion of the Court.

The appellee, a married woman, sues the appellants, on their promissory note, of five hundred and fifty dollars, payable to her one year after date.

Beasten, one of the defendants below, sets up the following defence : Being an endorser on a note of the appellee's husband, and feeling some uneasiness about its payment, he called on the appellee, for the purpose of making

some arrangement about its settlement.    After some conversation, in which he expressed his doubt as to the ability of her husband to pay the note, and that his failure to do so, would leave him, Beasten, in a critical condition, the appellee said,

"You hold on to that money, and I will see it paid out of that money which you hold, if John don't pay it."

That the defendant Beasten, went away satisfied, and the appellee and her husband shortly afterwards left the State, and when the husband's note became due, he, Beasten, paid it out of the money due by him on the note to the appellee.

This defence rests entirely upon the evidence of Beasten, and is contradicted in all material points by the appellee. Conceding, however, for the purposes of this case, that the agreement made with the appellee is such as is sworn to by the defendant, it is liable to two objections.

In the first place, it is a mere voluntary parol agreement, made without any consideration to support it; and secondly, it is a promise to pay the debt of another, not reduced to writing, and therefore not binding upon her.    *Wyman vs. Gray,* 7 *H. & J.,* 415 ; *Elliott vs. Giese,* 7 *H. & J.,* 475 ; *Nabb vs. Koontz,* 17 *Md.,* 283 ; *Rider vs. Riley,* 22 *Md.,* 540 ; *Hutton vs. Padgett,* 26 *Md.,* 231 ; *Thomas vs. Delphy,* 33 *Md.,* 373 ; *Frank vs. Miller,* 38 *Md.,* 450.

In order, however, to exempt it from the operation of these well settled rules of law, the appellants contend that the agreement is to be construed as a dedication of a particular fund in the hands of Beasten to the payment of a specified debt, and that the subsequent appropriation by him of this fund in pursuance of such agreement entitles him to set off the amount thus paid against his note to the appellee.

It is a sufficient answer to say, that at the time of this alleged agreement there was no fund in the hands of Beasten belonging to the appellee, for his note to her was not

then due, nor in fact was the note of the husband, on which he was endorser, even due; and he could not, therefore, have known whether he would be obliged to pay the same. No new liability was incurred by the defendant, Beasten, in consequence of this agreement. According to his evidence the language of the appellee was, "Hold on to that money, I will see you paid out of the money which you hold, if John don't pay it." In any light in which such an agreement may be viewed, it is but a mere promise on the part of the appellee to pay the debt of her husband, provided he did not pay the same, and comes, therefore, directly within the operation of the Statute of Frauds.

Finding no error in the rulings below, the judgment will be affirmed.

*Judgment affirmed.*