## BENJAMIN F. HAINES and others, *vs.* MORDECAI HAINES, NICHOLAS HARDY and wife.

A father executed a written contract under seal, by which he agreed, in consideration of $5 received, to convey to his daughter and her husband a tract of one hundred and seventy acres of land, of which he had put them in possession. HELD:

That this paper is alone sufficient to defeat the application of the other heirs of the father for a partition of this portion of his estate after his decease, and equity would decree its specific performance on application by the daughter and her husband.

Any supposed inadequacy of price, in the absence of fraud, would have but little influence in the interpretation of such a contract between parent and child.

The fact that improvements made upon the land by the daughter and her husband, with the knowledge of the father, and under his assurance that they need not be afraid to make them, because the land was the daughter's, is sufficient to prevent the partition of this land at the suit of the other heirs.

Parol proof that a father repeatedly said he had given to his son certain land, that the son took possession of and always treated it as his own, and improved it by liming it, repairing the buildings, and planting orchards, justifies the inference of a contract between them, that the son was to have the land if he would improve it, and possession and expenditure of money by the son in pursuance of such contract, which is therefore free from the objection of the statute of frauds.

To constitute a valuable consideration it is not necessary that money should be paid, if it be expended on the property on the faith of the contract, it constitutes a valuable consideration.

Equity will enforce a voluntary settlement at the instance of a child against the heir if he has the better equity, or if the heir has been otherwise provided for, and because the property claimed by the volunteer is *more* than the heir at law has, is no reason for refusing specific performance.

APPEAL from the Court of Chancery.

The bill in this case was filed by the appellants against the appellees, for partition of the real estate of Nathan Haines, deceased, among the parties to the suit, who were his heirs at law. The appellees resisted the division of lots Nos. 1 and 2, upon the grounds stated in the opinion of this court, and the chancellor, (JOHNSON,) decided that these lots were not liable to partition. From this decision the complainants appealed. The decision of the chancellor is reported in 4 *Md. Ch. Dec.*, 133.

The cause was argued before Le Grand, C. J., Eccleston and Tuck, J.

*Robert J. Brent* for the appellants.

The lots Nos. 1 and 2 are claimed in the answers of Mordecai Haines, and Hardy and wife, the one under a *parol gift* and the other by a *written gift*, for the nominal consideration of $5, but both are admitted to be claimed as gifts. The defendants are therefore volunteers, setting up an equitable title in bar of the partition. This can be done without a cross bill, but an equitable title must be shown. 6 *Paige*, 290, *German vs. Machin.* These gifts are said to constitute equitable titles, without any original consideration, because followed by possession short of ten years, and because of improvements made on the land and expenses incurred thereon by the donees, with the acquiescence of the donor. We deny that such acts confer an equitable title. It is now settled that equity will not, specifically enforce a voluntary agreement to convey. 2 *H. & G.*, 100, *Black vs. Cord.*

Natural love and affection are sufficient to raise a use in an executed deed, but not for the specific performance of an executory agreement, and as no action at law could be sustained thereon, equity will not enforce it. 2 *G. & J.*, 217, *Pennington vs. Gittings.* 2 *Spence's Eq.*, 285, note *b.*, 891, note *b.* 2 *Story's Eq.*, sec. 987. Therefore there is no right in the defendants to enforce this as an equitable contract, unless some other consideration than affection is shown.

Both answers speak of possession as taken under an intended gift from the father, and the evidence proves no more. The question is, therefore, whether possession of lands taken by a child under a parol gift, followed by an outlay of money by the donees in improving the lands, will constitute an equitable title to the lands sufficient as against the father or his heirs to prevent partition? Let us see first whether equitable relief could be decreed to the defendants, if they were complainants asking for the legal title upon such parol gift, possession and improvement. The possession taken can be no part per-

formance, unless taken under a contract founded on some valuable consideration and clearly proved in its terms. To enforce an agreement for lands, there must be a valuable consideration or ingredient in the contract. 2 *Story's Eq.*, secs. 787, 793, a. 2 *Hovenden on Frauds*, 4, note 2. 1 *Johns. Ch. Rep.*, 131, *Phillips vs. Thompson.* 3 *Rand.*, 238, 244, *Anthony vs. Leftwick.* 2 *Wheat.*, 336, 341, *Colson vs. Thomson.* Now an intended gift has in itself no element of valuable consideration, and unless the subsequent outlay of money in improvements can be considered as furnishing an original consideration for the voluntary gift, and thus constitute it, by matter *ex post facto*, a contract of sale, it is clear that the subsequent improvements furnish no consideration, whatever *lien* they may furnish for indemnity.

If the father should say, I will give you this property provided you will improve it, in that case the expenditure is to be the consideration and will make it, perhaps, a contract. But where a father gives possession under a parol gift, and the improvements are made for the benefit of the donee and without any requirement of the agreement, I deny that such improvements form a consideration for the contract, and this for the reason that the contract never provided for them. If the improvements are made by such donee in possession with the acquiescence and knowledge of the legal owner, they constitute a lien perhaps to that extent, but not an original contract for the foundation of an equitable title. 3 *Rand.*, 238. 1 *Johns. Ch. Rep.*, 273, *Parkhurst vs. Van Cortlandt.* 2 *Story's Eq.*, sec. 1237, 799, a, b. 6 *Madd. Ch. Rep.*, 2, *Robinson vs. Ridley.* 9 *Pet.*, 218, *King vs. Thompson.*

The rule for allowing compensation for improvements, is stated in 4 *Gill*, 104, *Jones vs. Jones.* Continuance in possession is no part performance. 2 *Hovenden*, 3. 3 *Rand.*, 238, 256. Nor is payment of money any part performance, as it can be repaid. 2 *Hovenden*, 3. 1 *Sch. & Lef.*, 41, *Clinan vs. Cooke.* 14 *Ves.*, 388, *Frame vs. Dawson.* The case of *Shepherd vs. Bevin*, 9 *Gill*, 40, is clearly an agreement founded on a valuable consideration as one of its original

elements, and does not justify the decree in this case. The agreement must be distinct and clearly proved in all its terms to have specific performance. 2 *H. & J.*, 76, *Wingate vs. Dail.* 9 *Pet.*, 218. The contract must be strictly mutual. 4 *Gill*, 476, *Geiger vs. Green.* 5 *Md. Rep.*, 28, 34, *Stoddert vs. Bowie.* 4 *Do.*, 463, *Mundorff vs. Kilbourn.*

Here then is a case without precedent. The attempt is made to convert a parol gift into a contract, because of subsequent voluntary improvements.

*William H. G. Dorsey* and *Thomas S. Alexander* for the appellees, argued:

1st. That the contract between Nathan Haines, and Hardy and wife, and Mordecai Haines, cannot be considered voluntary. There was not only a consideration but a valuable one. 9 *Pet.*, 204, *King vs. Thompson.* 9 *Gill*, 32, *Shepherd vs. Bevin.*

2nd. Mere inadequacy of price, unattended by fraud or circumstances of suspicion, is no ground of objection against enforcing a specific performance. 9 *Gill*, 32.

3rd. Money expended in the improvement of lands on the faith of the contract, constitutes a consideration on which to ground a claim for specific performance. 9 *Gill*, 32.

4th. The defendants are not asking the aid of a court of equity, and the court will not interfere in such a case.

5th. Nathan Haines, as appears by the proof, intended this property as an advancement to Mordecai Haines and Mrs. Hardy. The portion received by each of them is not more than a child's share, as will appear by the valuation of the commissioners.

6th. That the value of their improvements is more than they would receive in the partition, and if the partition is made they should first be reimbursed. 6 *G. & J.*, 424, *Griffith vs. Fred. Co. Bank.* 9 *Pet.*, 204.

Le Grand, C. J., delivered the opinion of this court.

This case arises on a bill filed by the appellants against the

appellees, for a partition of the real estate of Nathan Haines, late of Howard District, deceased.

The bill alleges that he had five children, of which three survived him, namely, Mordecai Haines, Mary Haines and Eleanor, who intermarried with Nicholas Hardy. John, who died before his father, left two children, John and William Haines; and Daniel, who also died before his father, left, as his children, the complainants.

The only dispute in the case is in relation to the lots numbered 1 and 2 on the plat filed in the cause. The defendants, Mordecai Haines and Nicholas Hardy and wife, claim these portions of the land as their own by virtue of gifts or contracts of Nathan Haines.

They insist that they were put in possession of these lots by Nathan Haines, and in pursuance of such possession and gift they made large improvements on the land.

The principles of law which must govern the decision of the cause are few and plain, and have been very distinctly recognised by the adjudications both of this and the Supreme Court of the United States. We refer to the case of *Shepherd vs. Bevin*, 9 *Gill*, 32, and to the case of *King's Heirs vs. Thompson and wife*, 9 *Peters*, 204.

A great number of witnesses were examined in reference to the declarations and acts of Nathan Haines in regard to the property in question, and also touching the possession and improvement of it by the defendants, Mordecai Haines and Nicholas Hardy and wife. There is no discrepancy in the evidence so far as relates to the possession of the land, and the improvement of it by these defendants during the life of Nathan Haines. It is clear, beyond all dispute, that Hardy erected buildings on the parcel claimed by him and his wife to the amount of from $2000 to $2500; and also, that this was done with the knowledge and consent of Nathan Haines, who said that they need not be afraid to make the improvements, as the land was Hardy's and wife's. Besides this evidence, Nathan Haines executed and delivered the following paper: "Received of Nicholas Hardy five dollars, to me in hand paid, for a part of the land conveyed to me by Walter Worthington, and now

laid off by John Brown, one hundred and seventy acres, more or less, and which I promise and oblige myself, my heirs and assigns, to convey to the said Nicholas Hardy and Ellen Hardy, his wife, the said land, to them and their heirs or assigns, in fee, and of which I have given them, the said Nicholas Hardy and Ellen Hardy, his wife, possession. In testimony whereof, I have hereunto subscribed my hand and seal, this —— day of July, eighteen hundred and forty-five.—*Nathan Haines*. (Seal.)"

Apart from all questions in regard to creditors—and there are none involved in this case—this paper, the execution and delivery of which is fully proven, is alone sufficient to defeat the application of the complainants for a partition of that portion of the land held and claimed by Hardy and wife. The contract is for a valuable consideration, and declares on its face that the parties have been placed in possession. Were this an application on the part of Hardy and wife for a decree for specific performance, a court of equity would not hesitate to grant it. Any supposed inadequacy of price, in the absence of fraud, would have but little influence in the interpretation of such a contract between parent and child. But this is not an application to a court of equity to decree a specific performance; the defendants ask no aid from the court; they only deny the right of the appellants to the assistance which they solicit, and that denial is placed on the ground, that their ancestor did not die seized of the land in question so as to entitle his heirs to ask a partition of it. But, independently of the written obligation which we have quoted, it is clear, that Hardy and wife did, on an express understanding had with Nathan Haines, improve the property to a considerable amount. This, under the authority of the cases which we have cited, is sufficient to vindicate the correctness of the decree of the chancellor in regard to the defence set up in their behalf.

The witness Mary Haines states, that "she has heard Nathan Haines say, that he had given the land to Ellen Hardy: that she need not be afraid to build upon it, because it was hers." And the witness Samuel O'Neill testifies, that "he had a conversation with Haines on the matter about 1844, when Hardy was building the house. He (said Nathan) then told witness

that Hardy need not be afraid to build on the property, that he had given that property to his daughter Ellen; that it belonged to her: said Nathan several times spoke to the witness about the work on the house, and said if he had anything to do with it he would have it done differently." These extracts from the testimony, are sufficient to show that the improvements were made on the property by Hardy, because the land had been given to his wife, and under the assurance of her father that he need not be afraid to make them because the land was her's. We are, therefore, of opinion, that, both under the parol evidence and the paper executed by Nathan Haines, Hardy and wife are entitled to the rejection of the pretensions of the appellants.

In regard to the claim set up by Mordecai Haines, the evidence is somewhat different. It is not supported, as is that of Hardy and wife, by anything under the seal of his father. It rests entirely on the testimony of the witnesses. But this is amply sufficient to show that he dealt with the property considering it as his own, and this, too, with the knowledge and acquiescence of his father. The evidence shows, that he limed the land, expending for that purpose from two to eight hundred dollars as estimated by the different witnesses.

Mary Haines testifies that "Nathan Haines gave to his son Mordecai Haines, the farm adjoining the one occupied by Nicholas Hardy. She has often heard her father (said Nathan Haines) say, that he had given that farm to his son Mordecai. Mordecai Haines paid the taxes on the farm; he gave the money to his father to pay to the tax collector. Nathan Haines gave this property to his son Mordecai about fifteen years before his death. Mordecai Haines was in possession of his property at the time of the death of the said Nathan Haines. He (Mordecai) *was opposed to going to live at* the farm. He wished to live at the home place; but his father induced him to go, *and told him that that should be his farm; that it was good land but out of repair.*" Philip Cecil proves that Mordecai was in possession of the land some eight or nine years before the death of his father, and put "considera-

ble lime on the land and *planted an orchard.*" Denton Miller swears "that he knows that Mordecai *plastered some portion of the house, and laid the floor of the porch; also put out lime and planted an orchard.*" William H. Hardy proves "that he knows the land was given to Mordecai Haines by Nathan Haines, (witness' grandfather.) Witness has repeatedly heard said Nathan say, that he had given the Lime-Kiln place to his son Mordecai. The Lime-Kiln is the farm now claimed by the heirs of the said Mordecai. Said Mordecai took possession of this place in 1840, and continued in possession until his death in 1852, *exercising over it every act of ownership.* When said Mordecai took possession of the place it was in a very bad condition, both fences and land. *He put lime upon most of the fields and repaired the house.*" The same witness further says, "that he lived with said Nathan Haines, and has often been present at conversations between said Nathan and said Mordecai, and has heard said Nathan say, that the said Mordecai was opposed to going to the farm, because he had always expected to get the "home-place." That he, (said Mordecai,) had planted an orchard on the home-place, with some promise from him (said Nathan,) that he should leave him this place; that it was with difficulty that he (said Nathan,) had induced his son (Mordecai) to take the new place that he had given him. That the said Nathan had told him (said Mordecai,) that if he would take the place, and found that he could not make a living there, that he, (said Nathan,) would assist him. Mordecai took the place and his father assisted him. This was for the first year: after that time said Mordecai was able to get along himself. Witness knows that Mordecai Haines always paid the taxes on his property. He (said Mordecai,) made considerable improvements on the place, *both to the land and to the house.* Mordecai Haines took possession of this place in 1840, and continued in possession until his death. Nathan Haines never interfered in any way in the management of the place."

It is on these facts the claim of Mordecai Haines rests. On the part of the complainants it is said, that the evidence

at best, only shows an intention on the part of the father to give the land to him; and that there was no such contract, or such partial execution of a contract, if there was any, as will take the case out of the statute of frauds. In addition to these objections, it is objected that Mordecai is but a volunteer, and that a court of equity will not interfere to enforce his claim. The solution of these objections must depend upon an analysis of the testimony, and the application of the principles of the cases to which we have referred. In the first place then, it must be admitted that the testimony shows, that Nathan Haines repeatedly said he had given the land to his son, and, also, that the latter took possession of it and improved it, exercising all the time the rights of an owner. And the question is, whether these circumstances are such, as to justify the inference, that a contract existed between the father and son, whereby the latter was to have the farm if he would improve it, and that in pursuance of such contract, the son took possession and expended his money on it? If the facts warrant these conclusions, then the case is free from the objection growing out of the provisions of the statute of frauds.

In the case of *Kings' Heirs, et al., vs. Thompson & wife,* 9 *Peters,* 218, the court say: "to constitute a valuable consideration, it is not necessary that money should be paid: but if as in this (that) case, it be expended on the property, on the faith of the contract, it constitutes *a valuable consideration."*

It is impossible, in our judgment, to examine the testimony in this cause, without coming to the conclusion that the agreement between Nathan Haines and his son Mordecai was, that the latter was to have the farm, on the condition that he was to work it, nor without perceiving that it was in pursuance of this understanding between the parties that Mordecai limed the land, regulated the fences, and improved the buildings. Such acts and expenditures on the part of Mordecai under such an agreement, constituted a valuable consideration, and this is all that is required to defeat the claim of the appellants. But if the case required it, we would be pre-

pared, on authority, to give validity to the contract even were it voluntary.

Although a court of equity will not generally enforce a voluntary settlement against the *settler*, at the instance of a wife or child, it will at the instance of a child against the heir if it appear he have the preferable equity, or if the heir has been provided for either out of the other estate of the ancestor, or from any other quarter; and, "the circumstance, that the property which the volunteer claims, is *more* considerable than the heir at law has, is no reason for refusing a specific performance." *Atherley on Marriage Settlements*, 137, (27 *Law Lib.*, 72.)

In the case before us, the appellants are provided for by the lot which has been decreed to be sold. On the whole we conceive this case free from all difficulty. The contract is satisfactorily enough made out, and that the expenditures have been made in pursuance of it, is equally well established.

<div align="right">

*Decree affirmed.*