(Decided 14th June, 1876.)

---

RICHARD S. HARDESTY *vs.* E. HALL RICHARDSON, Executor of RICHARD C. HARDESTY, &c.

*Specific performance of Parol gift of a farm by a Father to his son—Effect of Expenditures and improvements made in consequence of the promise to convey.*

In an application for the specific performance of a parol gift of a farm, by a father to his son, the most satisfactory evidence of the contract sought to be enforced, is required. The proof must be clear, definite and conclusive as to the fact of the gift, and those acts done on the faith of it, which render inequitable any attempt by the donor to avoid the gift.

But where the proof is thus clear, and all other conditions are shown to exist to entitle the party to the assistance of a Court of Equity, that Court will not hesitate to lend its aid, simply because the proof may rest entirely in parol.

Case where the facts were considered sufficient to warrant a decree for the specific performance of a parol agreement by a father to convey a farm to his son.

Although it was neither alleged nor proved that it was any part of the agreement or understanding, that the farm was to be improved by the son as a condition upon which he was to receive a conveyance of the title from his father, the allegation and proof that large expenditures were made in permanent improvements upon the land, with the knowledge of the father, and which were induced by, and made upon the faith and in consideration of the father's promise to convey the land, constitute a good equitable consideration which Courts of Equity will protect and enforce.

In such cases the Court relies, not so much on the contract, which falls within the Statute of Frauds, as on the acts done under it subsequently, on the faith that the promise will be performed by the other party.

When a gift has led to the expenditure of money or labor on the land given, in making permanent improvements of considerable extent, the gift becomes irrevocable in equity, as it would operate a fraud on the donee to allow the donor to avoid the performance of his undertaking.

APPEAL from the Circuit Court for Harford County, in Equity.

The appellant brought his action of ejectment in the Circuit Court for Harford County, 18th of December, 1869, against his son, Richard C. Hardesty, to recover a farm in said county, called "Wilna," and obtained judgment 23rd May, 1870. In August, 1870, Richard C. Hardesty filed his bill on the equity side of said Court, against the appellant, a resident of Baltimore City, praying an injunction against the execution of said judgment, and for the specific performance of an alleged contract by his father, for the conveyance of said land. The injunction was issued as prayed. After answer filed, the complainant died, and the appellee, his executor and trustee, as also the *cestuis que trust*, were made parties, testimony was taken, and after argument the case was submitted.

The Court, (WATTERS, J.,) decreed a perpetual injunction, and a conveyance in fee-simple of said land, to the trustee by Richard S. Hardesty, the defendant.

From this decree the present appeal was taken. The facts of the case are sufficiently stated in the opinion of the Court.

The cause was argued before Bartol, C. J., Brent, Grason, Alvey, and Robinson, J.

*Henry W. Archer* and *Henry D. Farnandis,* for the appellant.

An agreement, to merit the interposition of a Court of equity, must be fair, reasonable, *bona fide,* certain in all its parts, mutual, and for a good and sufficient consideration. If any of these be wanting, equity will not relieve. *Geiger vs. Green,* 4 *Gill,* 472, 475 ; *Waters vs. Howard,* 8 *Gill,* 262, 277, 282 ; *Mundorff vs. Kilbourn,* 4 *Md.,* 459, 464 ; *Rider, &c. vs. Gray,* 10 *Md.,* 282 ; *Stoddard vs. Bowie,* 5 *Md.,* 18, 28, 34.

The complainant must make out by clear and satisfactory proof, the very contract laid in the bill, and part performance must be of the identical contract set up. 1 *Story's Eq. Jur.,* sec. 762 ; *Beard vs. Linthicum,* 1 *Md. Ch. Dec.,* 345, 348–9 ; *Duvall vs. Myers,* 2 *Md. Ch. Dec.,* 401, 406 ; *Mundorff vs. Kilbourn,* 4 *Md.,* 459, 462.

Acts of alleged part performance must be referrible exclusively to the alleged contract. They cannot prove the contract, which must be first clearly established. *Bowie vs. Stonestreet,* 6 *Md.,* 418.

Alleged acts of part performance have different import when between strangers, and between father and child ; such as would, in the first case, imply a contract, might, in the second, be referred to something else. *Waters vs. Howard,* 8 *Gill,* 262 ; *Eckart vs. Eckart,* 3 *Penn.,* 332–65.

Equity will not enforce a voluntary contract to give or convey though in part performed. *Black vs. Cord,* 2 *H. & G.,* 100 ; *Pennington vs. Gittings,* 2 *G. & J.,* 208 ; *Lloyd vs. Brooks,* 34 *Md.,* 28 ; 1 *Story's Eq. Jur.,* secs. 706, 793*b.*

As to voluntary contracts *inter vivos*, the general principle is, that equity will not interfere, but leaves them where the law finds them. 1 *Story's Eq. Jur.*, sec. 706; *Lloyd vs. Brooks*, 34 *Md.*, 28.

Equity will not generally enforce a voluntary settlement against the settler, though it will against his heir. *Haines vs. Haines*, 6 *Md.*, 435, 444. Natural love and affection will support a deed, but not sufficient to enforce a voluntary agreement. *Pennington vs. Gittings*, 2 *G. & J.*, 208, 217–18.

The consideration must be embodied in and be part of the contract. The two cases most relied upon by the appellee, in his argument below, are clearly distinguishable from this. In *King's Heirs vs. Thompson and Wife*, 9 *Peters*, 218, it was clearly proved that King agreed to convey the land, if Thompson would make the improvements. They were made subsequently, but being according to the agreement, and part of it, were a sufficient consideration. So in *Haines vs. Haines*, 6 *Md.*, 435, the Court found it unequivocally proved that a like contract had been made, viz., that if Mordecai did certain improvements, the father would convey. But in the case at bar, there is no room for a contract by implication. An express contract is set up, a definite consideration stated, as part of that contract, on which alone the complainant can have relief. The subsequent improvements are not alleged to have been, in pursuance of the agreement, set up, or to have been any part of the consideration, or any part of the contract, and cannot be relied on to give it validity.

The decree must be according to the *allegata et probata*; nothing is in issue but what is alleged in the bill. 1 *Daniel's Ch. Pr.*, 377, and *note* 2. Even if the contract be proved, a decree for specific performance is not *ex debito justitiæ*, but the Court will exercise a sound discretion, in view of all the circumstances, in determining whether to decree specific performance or not. *Geiger vs. Green*, 4

*Gill*, 472, 475 ; *Waters vs. Howard*, 8 *Gill*, 262 ; *Wadsworth vs. Manning*, 4 *Md.*, 59 ; *Crane vs. Gough*, 4 *Md.*, 316, 331.

*Edwin H. Webster* and *John H. Price*, for the appellees.

The principles of law which should govern this case, have been distinctly recognized by the Court of Appeals of our own State, and by the Supreme Court of the United States. *Shepherd vs. Bevin*, 9 *Gill*, 32 ; *King's Heirs vs. Thompson and wife*, 9 *Peters*, 204 ; *Haines vs. Haines*, 6 *Md.*, 435 ; *Freeman vs. Freeman*, 43 *N. Y.*, 34 ; *Neal vs. Neal*, 9 *Wallace*, 1.

ALVEY, J., delivered the opinion of the Court.

In all applications like the present the rule is certainly strict in requiring the most satisfactory evidence of the contract sought to be enforced. The proof must be clear, definite and conclusive as to the fact of the gift, and those acts done on the faith of it which render inequitable any attempt by the donor to avoid the gift. But where the proof is thus clear, and all other conditions are shown to exist to entitle the party to the assistance of a Court of equity, that Court will not hesitate to lend its aid, simply because the proof may rest entirely in parol.

Here the proof is definite and conclusive that the farm "Wilna" was purchased by Richard S. Hardesty, the father, for Richard C. Hardesty, the son, upon the latter's selection. The farm was purchased with the distinct understanding that the son should at once take possession, hold and use it as his own ; the father repeatedly admitting and stating to divers persons, and as if he desired it to be so understood by every one, that he had purchased the farm for his son and had given it to him, and placed him in possession of it as exclusive owner. And in accordance with these admissions and statements by the father were the continuous pretensions and conduct of the son, from

the time of his taking possession in the fall of 1864 to the time of his death in 1871.    He was all the while in the exclusive possession and enjoyment of the farm, as his own. It was assessed to him, and he paid all the taxes on it, from the time it was purchased down to the time when the father sought to recover it by virtue of the legal title held by him.    The buildings on the farm were insured by and in the name of the son ; and in obtaining the insurance the father made representations in reference to the ownership of the farm, which, when taken in connection with the other facts of the case, would seem to be quite conclusive against him.    He introduced his son to the officers of the insurance company as an applicant for insurance, and in answer to a specific inquiry as to the ownership of the farm, he stated that he had purchased the farm for his son, and that as soon as some preliminary arrangements were made, he intended to make him a deed for it; that he had given him the farm.    The preliminary arrangements referred to were, doubtless, the procuring the conveyance of the legal title from the Messrs. Tyson, from whom the farm was purchased, and with whom there was some misunderstanding or controversy as to the quantity of land to be conveyed. Additional insurance was subsequently obtained, also upon the representations of the father, that his son had made extensive alterations and improvements in the dwelling-house, costing between $2500 and $3000 ; and it was upon these representations that the insurance officers acted, in receiving the applications signed by the son as owner, and issuing the policy to him in his name.    What reason or motive could have prompted the father to make these representations, if they were not true ?    Indeed, the same question may be asked with reference to the many other statements of the same import, made to other persons who have testified distinctly and circumstantially to conversations with the father upon the subject.    It is hardly fair to suppose that he intended at the time to deceive either the son

or the public in regard to the matter. And not only was the son placed in the possession by the father, accompanied by the declarations that the farm had been purchased for and was given to him, but the proof is quite conclusive, indeed not at all controverted, that the son expended considerable sums of money in building, and repairing buildings, on the farm, and in improving the farm generally. This was all done with the knowledge and apparent full approbation of the father. From the circumstances under which the farm was purchased, the manner in which it was held and used by the son, and the amount of money expended in improving it, in connection with the representations of the father, the conclusion is irresistible that it was the understanding from the beginning that the farm was to be conveyed to the son, so soon as the legal title was acquired by the father. Nor was this unreasonable or at all unnatural. The farm cost only about $11,500, and the father had but four children, and was a man of large means. He appears to have had a special motive in inducing the son to become a farmer, and to settle in the country, away from misleading associations of the city. The latter, moreover, was about to be married, and it appears to have been the purpose of the father to give the son a good start in the world.

But it is insisted by the appellant that the contract as alleged in the bill was purely a voluntary one, without consideration, and that the subsequent improvements placed on the farm are not alleged to have been made in pursuance of the agreement, or to have been any part of the consideration therefor, and that, consequently, the contract is not shown to be of a character to be enforced, conceding it to be fully proved as alleged. In this, however, we do not agree. We think the contract sufficiently alleged, and that the proof fully supports it as alleged.

It is true, it is neither alleged nor proved that it was any part of the agreement or understanding that the farm

was to be improved by the son, as a condition upon which
he was to receive a conveyance of the title from his father;
but it is alleged and abundantly proved that large expen-
ditures were made in permanent improvements upon the
land, with the knowledge of the father, and which were
induced by and made upon the faith and in consideration
of the father's promise to convey the land.   This consti-
tutes a good equitable consideration, which Courts of
equity will protect and enforce.   In such cases the Court
relies not so much on the contract, which falls within the
Statute of Frauds, as on the acts done under it subsequently,
on the faith that the promise will be performed by the other
party.   When, therefore, a gift has led to the expenditure
of money or labor on the land given, in making permanent
improvements of considerable extent, the gift becomes
irrevocable in equity, as it would operate a fraud on the
donee to allow the donor to avoid the performance of his
undertaking.   "The Statute of Frauds requires a contract
concerning real estate to be in writing, but Courts of equity,
whether wisely or not it is too late now to inquire, have
stepped in and relaxed the rigidity of this rule, and hold
that a part performance removes the bar of the statute, on,
the ground that it is a fraud for the vendor to insist on the
absence of a written instrument, when he had permitted
the contract to be partly executed.   And equity protects a
parol gift of land, equally with a parol agreement to sell
it, if accompanied by possession, and the donee, induced
by the promise to give it, has made valuable improvements
on the property."   *Neale vs. Neale,* 9  *Wall.*, 1 ; 1  *Lead.
Cas. Eq., Amer. note to Lester vs. Foxcroft,* 625, 734.
This principle is fully and clearly maintained by this
Court, as it is in many of the other Courts of the country.
The cases of *Shepherd vs. Bevin,* 9 *Gill,* 32, and *Haines vs.
Haines,* 6 *Md.,* 435, fully illustrate the doctrine ; and the
cases of *King vs. Thompson & Wife,* 9 *Pet.,* 204, *Kurtz
vs. Hebner,* 55 *Ill.,* 514, and *Freeman vs. Freeman,* 43 *N.*

*Y.*, 34, relied on by the appellee, are equally explicit in support of the principle upon which we decide this case. The facts of the case of *Freeman vs. Freeman* were very analogous to those involved here.  In that case, it was held that the expenditures made upon the land, on the faith of the promise to give the land, in permanent improvements, constituted in equity, a consideration for the promise of the plaintiff, and that the performance of the promise, although by parol, could be enforced in equity, and that an action of ejectment would not lie, in that State, against the defendants in possession.

Upon the whole, we think the decree of the Court below was right, and therefore affirm it with costs.

*Decree affirmed.*

(Decided 15th June, 1876.)