## CHARLES B. LONEY *vs.* ANNIE M. LONEY ET AL.

*Parol Gift of Land Accompanied by Possession.*

When a father makes a verbal gift of land to his son, who enters into possession and expends money in making permanent improvements, the son is entitled to a conveyance of the land.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (DENNIS, J.), dismissing appellant's bill for specific performance.

The cause was argued before McSHERRY, C. J., BRYAN, PAGE, ROBERTS and BOYD, JJ.

*Joseph C. France* and *Robert E. France,* for the appellant.

*Abraham Sharp,* for the appellees.

BRYAN, J., delivered the opinion of the Court.

Charles B. Loney alleged that his deceased father, Charles Loney, made him a verbal gift of a portion of a certain leasehold lot in the city of Baltimore, and that he entered into possession of the portion given to him and erected buildings on it at considerable expense, and that his father died without having executed a deed conveying to him the legal title to the lot. He filed a bill in equity against the executors of his father, and against his widow, and the other children and the husbands of the married daughters. The answers of the widow and of the daughters and the husbands of such of them as are married deny the gift of the lot by the father. The answer of Lewis Loney, the only brother of the complainant, admits the allegations of the bill of complaint. The answer of the executors does the same. We shall have something to say about the answer of the executors hereafter. The Court below dismissed the bill, and the complainant appealed.

The question is principally one of fact. The deceased owned and occupied a leasehold lot in the city of Baltimore, at the northwest corner of Paca and Barre streets, fronting fifty feet on Paca street, and running back to Spring alley, binding one hundred and twenty feet on Barre street. The portion of the lot claimed by the complainant is the rear part of it, which is separated from the front part by a twelve foot way with a gate on Barre street. The evidence is very voluminous, and much of it has no important bearing on the question in controversy. We have considered it carefully, but it would answer no good purpose to cite it in detail. We shall content ourselves by mentioning such parts of it as bear on the essential questions in the case. The witness, Redsecker, testified that the father told him that the property "*from here back*" (pointing from the entrance on Barre street) belonged to his son. The old man (according to the witness), said: " I gave it to him, and he fixed it up to suit himself." At the time there was on this portion of the lot a three-story brick house, and in the rear of that a two-story brick building used for a stable and carriage house. The witness said that he was pretty sure that the conversation took place in the summer of eighteen hundred and eighty-four. Mrs. Dougherty, Miss Dougherty, Richardson, Leydecker, Switzer, Lerian, Ensor, and Walter testified to the same general effect in respect to the gift. Cornthwaite testified that the improvements made on the rear portion of the lot were a very large brick stable, a two-story dwelling house and a store. He also testified that he heard a conversation between old Mr. Loney and another person, in which the old man said : " Fix the property to suit Charley, as it belongs to him." The complainant paid the expense of the improvements on the property. It is shown that he paid more than eleven hundred dollars for labor and materials used in the buildings ; and it is evident from Ensor's testimony that the materials cost considerably more than the amounts shown by the bills which have been produced. The testimony in regard to these statements made by Loney,

the father, has not been contradicted by direct testimony. But evidence is given by the mother, and other members of the family, tending indirectly to disprove the fact of the gift by the father.   None of these witnesses ever heard of any such gift.   They testify that they had no reason to believe that any had ever been made, and that they had every opportunity of knowing it, if such were the case ; and some of them testify that the father always spoke of the property as his own, and that the father used the stable for keeping cows and a horse and kept hay in the loft.   There was a good deal of testimony which showed that much ill-feeling existed towards the complainant, and charges were made against him in respect to matters which do not bear in any way on the alleged gift.   As he could not be a witness he has had no opportunity of being heard in his defence. Charles B. Loney and Lewis H. Loney were the executors of their father.   When they passed their account in the Orphans' Court they included in it this rear lot, and it has been distributed under the will of the deceased.

Without an elaborate discussion of the evidence, we may say that we are satisfied that Loney, the father, did give to his son the lot in question.   The evidence of the many witnesses who testify distinctly and positively to the old man's declarations to this point requires that we should believe it. None of the witnesses for the defendants were present when the father's declarations on this subject are alleged to have been made ; and the contradiction to them is altogether inferential, founded on their deductions made from circumstances such as that they had never heard of the gift, although they had ample opportunity to know it, if it had really been made ; and on statements by the old man that it was his property, and on the use of a portion of the lot by him in a manner which indicated the ownership of it by him.   After the time when, according to the evidence in behalf of the complainant, the gift was made to him, he entered upon the lot and expended more than eleven hundred dollars in erecting buildings on it, and making . other improvements.

This action on his part consummated his title in equity ; and it could not be affected or defeated by any subsequent statements or conduct by the giver.　Moreover, the keeping of cows, or a horse, or hay in the stable, or storing articles in a place on the premises which was not otherwise used, would under ordinary circumstances be permitted by a son to gratify a parent who had always shown great affection for him.　As the son had never received a deed conveying the legal title to the lot to him, it was reasonable and proper that he should include the property in his account in the Orphans' Court, and without embarrassing the proceedings before that tribunal, bring his case to a Court of Equity, where his rights could be fully adjudicated.　The decisions have fully established that where a father makes a verbal gift of land to his son, and the son enters into possession and expends money and labor in making valuable improvements of a permanent character, he is entitled to a specific performance.　*Hardesty* v. *Richardson*, 44 Md. 616 ; *Haines* v. *Haines*, 6 Md. 435.　The decree must, therefore, be reversed and the cause remanded in order that a decree may be passed establishing the gift to the complainant, and a trustee appointed to convey to him the legal title.

We have already stated that the complainant is on both sides of the record.　He is made defendant as one of the executors of his father.　In that capacity he and his co-executor admit all the allegations of the bill of complaint, and consent to the passage of a decree as prayed.　We have on two occasions expressed our disapproval of a practice of this kind.　Without repeating what we have already said, we refer to *Owens* v. *Crow*, 62 Md. 491 ; and *Stein* v. *Stein*, 80 Md. 306.

> *Reversed and remanded with costs*
> *in both Courts.*

(Decided January 4th, 1898).