BESSIE G. EARECKSON ET AL. *vs.* JOHN G. ROGERS.

*Estoppel of Mortgagee to Claim Interest on Mortgage from Purchaser of Equity of Redemption—Right of Assignee to Benefit of Estoppel.*

When a person makes a statement to another which induces the latter to refrain from demanding indemnity from a third party, who was bound to furnish the same, the person making such statement is estopped from afterwards enforcing a claim against the person relying upon the statement who would have been protected against it by the indemnity.

Property was conveyed by the mortgagor to A. upon the under-
standing that it would only be liable for interest on the
mortgage from the date of the conveyance. The mortgagor
gave to the mortgagee his promissory note for the amount
of interest unpaid at the time of this transfer. After the
transfer A. paid interest on the mortgage, and subsequently
also the balance due on the purchase money to the mort-
gagor. The mortgagee had informed A. that a sum was due
for unpaid interest, but afterwards and before A. paid all of
the purchase money, the mortgagee told him that the matter
had been adjusted. *Held,* that although the acceptance by
the mortgagee of the promissory note for the interest was
not a payment thereof, and he did not intend to relinquish
the lien of the mortgage as to the interest, yet since his con-
duct induced A. to pay for the property, supposing that the
overdue interest was not a lien on it, the mortgagee is now
estopped to enforce payment of the same as a lien under the
mortgage.

When the purchaser of property subject to a mortgage is enti-
tled to the benefit of an estoppel against the mortgagee, that
estoppel operates also in favor of the person to whom he
conveys the property.

*Decided January 14th, 1910.*

Appeal from the Circuit Court for Howard County
(BRASHEARS, J.).

The cause was argued before BOYD, C. J., PEARCE,
SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Albert C. Ritchie* (with whom were *Stuart S. Janney* and
*R. Contee Rose* on the brief), for the appellants.

*John G. Rogers,* appellee, submitted the cause on his brief.

PEARCE, J., delivered the opinion of the Court.

The original bill in this case was filed by Mrs. Bessie G.
Eareckson and her husband, Dr. Wm. R. Eareckson against

Judge John G. Rogers, alleging that he was the holder of a mortgage for the principal sum of $2,000, upon a parcel of land in Elkridge, Howard County, owned by Mrs. Eareckson, which mortgage the plaintiffs were ready and desirous to pay, but that a dispute had arisen between the parties as to the amount of interest due and payable on said mortgage, the plaintiffs claiming that all interest had been paid up to October 1st, 1907, and there remains due the principal sum, with interest from October 1st, 1907, while the defendant claims, there is due in addition to the amount admitted by the plaintiffs, the sum of $310 for interest in arrears on said mortgage as of July 23, 1906, with interest from that date, represented by a note of Judge I. Thomas Jones to Judge John G. Rogers, payable January 23, 1907.

The prayer of this bill was that an account might be taken under the direction of the Court, of the amount of interest due on said mortgage, and for such further relief as the case should require.

The history of the transactions which led to this dispute as gathered from the proceedings, need to be given somewhat in detail, in order to a proper understanding of the merits of the controversy.

The mortgaged premises were formerly owned by the late Judge Jones, who on October 1st, 1881, mortgaged the same to Judge Rogers to secure a loan of $2,000, payable six years after date, with interest in the meantime semi-annually at six per cent. per annum. The principal debt has never been paid, and the only question is as to the amount of interest unpaid, and collectible *in virtue of the lien of said mortgage.* Mrs. Eareckson was a daughter of Judge Jones, and on January 11th, 1896, he made a written agreement with Dr. Eareckson for the sale to him of said parcel of land at a price, and upon terms, therein stated, but which it is not important to set out here. This agreement does not mention the Rogers mortgage, but Dr. Eareckson knew of its existence and bought subject to the principal of said mortgage with interest from the time possession was taken by him, up to which time Judge

Jones was to pay the interest on the mortgage. On October 18th, 1899, Dr. Eareckson entered into possession of the property, having paid up to that date $3,600 of the purchase money to Judge Jones, but leaving due and unpaid exclusive of the principal of said mortgage, with interest from that date, and a ground rent of $72 per annum, since redeemed by Dr. Eareckson, the sum of $3,200.

The interest on said mortgage from October 1, 1899, to October 1, 1900, was paid by Dr. Eareckson to Judge Jones and by him was to be paid to Judge Rogers. Whether it was so paid does not appear from the record. It does appear howeevr that the interest accruing on this mortgage from April 1st, 1901, to October 1st, 1907, was paid by Dr. Eareckson by his checks to Judge Rogers, and that a check for the semi-annual interest due April 1st, 1908, was sent to Judge Rogers by Dr. Eareckson May 16th, 1908, and was returned by him, he refusing to accept the same unless the note of $310 already mentioned was also paid, which Dr. Eareckson refused to pay.

On October 2nd, 1903, Dr. Eareckson having completed his payments, Judge and Mrs. Jones conveyed the property to him, subject to the ground rent and mortgage heretofore mentioned, and this deed was recorded October 5th, 1903. On May 15th, 1907, Dr. Eareckson having then redeemed the ground rent, conveyed the property to his wife Mrs. Eareckson, subject to said mortgage.

Dr. Eareckson testified that he never knew or heard of any claim by Judge Rogers for any interest in arrear on this mortgage until May, 1902, when he received from Judge Rogers a receipt for the interest due April 1st, 1902, upon which was written below the signature these words: "But Doctor, what about the other money due me?" This receipt together with all other receipts for interest paid by him to Judge Rogers, and with all the checks therefor and all other letters and papers relating to this matter were delivered by Dr. Eareckson to his counsel, Mr. R. Contee Rose, and were totally destroyed by a fire in his office January 31, 1909.

He testified that on receipt of that paper he saw Judge Jones in relation to the matter and in consequence of what he told him he saw Judge Rogers shortly after at Relay Station in June, 1902, and asked him what he had done about the claim, and he replied: "That is all right." That he explained to Judge Rogers that he had not then taken his deed, and asked him if it would be all right, and he replied "certainly," his exact words. He also testified that after that he continued to pay Judge Rogers the semi-annual interest on this mortgage up to October 1, 1907, and never heard anything of the demand now made until the check for the interest due April 1. 1908, was returned to him, and that if he had known in June. 1902, when he had the conversation above mentioned with Judge Rogers that there was any claim for interest in arrear on the mortgage or any lien on that property he would not have settled with Judge Jones and taken his deed without settling the claim of Judge Rogers. He also testified that the various receipts of Judge Rogers for interest were all or generally expressed to be "in full for interest" up to their respective dates. Mr. Rose testified that he had carefully examined these receipts while in his possession before the fire, and confirmed Dr. Eareckson as to the receipts being generally "in full," and he was positive as to the receipt for the interest due April 1st, 1902.

Judge Rogers testified in chief that he knew nothing of the conveyance or sale of the property by Judge Jones to Dr. Eareckson until after the deed was recorded, when he examined the Land Record Index, and that there was then in arrears for interest on this mortgage three years interest at six per cent. per annum or $360, and that before Judge Jones gave him his note therefor, he had written Dr. Eareckson calling his attention to the fact that this was overdue interest, and asking him what he intended to do about it. He also testified in chief that after writing Dr. Eareckson he saw him at Ellicott City, instead of Relay and Dr. Eareckson asked him what he had done about that overdue interest and that he replied: "That's all right, or words of similar import;"

that he afterwards saw him at a ball game near St. Dennis in the fall of 1908, and then had quite an extended conversation touching that overdue interest. Dr. Eareckson had already testified that at this ball game Judge Rogers told him that his reason for telling him previously that the matter had been adjusted was because Judge Jones did not wish Dr. Eareckson to know that he owed him anything.

On cross-examination Judge Rogers testified that it was between October, 1903, and January, 1904, that Judge Jones gave him the note of $360 for overdue interest on the mortgage, and that he thought it was for 1900, 1901 and 1902; that Judge Jones made no question about giving the note, but asked him not to say anything further to Dr. Eareckson about it. He also testified that he never gave Dr. Eareckson any receipt for interest expressed to be "in full to date," and that he never was asked by Dr. Eareckson if it was right to take a deed from Judge Jones, and never replied "why, certainly," and that he never knew Dr. Eareckson was interested in the property until after the deed was recorded, and never received any check from him prior to the recording in October, 1903, although it appears from the check stubs of Dr. Eareckson in the record that four payments of interest on this mortgage from October, 1900, to October, 1902, were made by Dr. Eareckson's checks to the order of Judge Rogers, which checks Dr. Eareckson testified were indorsed by Judge Rogers, and were by him turned over to his counsel Mr. Rose, and were destroyed in the fire before mentioned. Both Mr. Rose and Mr. White also testified that they had examined these checks, and that they purported to bear the indorsement of Judge Rogers, from all of which it would seem most probable that Judge Rogers' recollection is at fault in this respect.

Judge Jones died in January, 1907, having made some small payments on the note for $360, and renewing it from time to time, the last renewal being the note for $310 already described.

After filing the original bill, the plaintiffs, on January 26th, 1909, filed a petition in that cause, stating that the de-

fendant, notwithstanding the pendency of. that proceeding, had advertised the mortgaged premises for sale under a power of sale thereon, and the plaintiffs prayed for and obtained an injunction restraining the sale until an account should be taken as prayed in the original bill; and still later, on February 8th, 1909, the plaintiffs, with leave of the Court, filed an amended bill, praying in addition to the taking of an account for a full and complete discovery by the defendant of the character of the claim for interest in arrears, and when and how the same arose, and of all the circumstances attending it, and also for the redemption and release of said mortgage upon payment of the amount found to be due thereon.

The defendant answered the amended bill, under oath, fully and particularly. The usual replication was filed, and testimony was taken from which we have extracted the material part as hereinbefore recited, and we here transcribe in full that part of the answer which makes the discovery prayed.

"And this defendant having fully answered each and every paragraph of said bill of complaint, says further "by way of answering and replying to, and making a discovery of, the indebtedness claimed by him, viz, that in 1881 this defendant, being upon close and intimate and enduring friendship with the late Judge I. Thomas Jones, loaned him, the said I. Thomas Jones, upon leasehold property in Howard County, for the period of five years the sum of two thousand dollars, and received from him, one principal promissory note for the period of five years, and ten interest notes, for sixty dollars each payable at regular intervals of six months; that the mortgagor continued to pay the interest upon the same (after all of the said interest notes were paid), until about the year nineteen hundred; that not desiring to annoy said mortgagor and feeling that his loan was perfectly secure, this defendant allowed the same to run on, until having seen, or being otherwise advised, that the said property had been transferred to William R. Eareckson, this defendant wrote to said William R. Eareckson, advising him that said amount of interest was in arrears and unpaid; that said William R. Eareckson did

not reply, but Judge I. Thomas Jones requested this defend-
ant not to say anything more to said William R. Eareckson;
that about October, 1903, this defendant again demanded
payment of said interest, three hundred and sixty dollars, and
said Judge Jones said he would give this defendant his, the
said Jones' note for said amount of three hundred and sixty
dollars, for six months and would pay the same gradually;
that said note was regularly renewed from time to time until
the death of Judge Jones which occurred in January, 1907,
leaving said note unpaid and a balance of three hundred and
nineteen dollars still due and owing thereon, which with in-
terest is still due and owing this defendant as interest on said
mortgage; that this defendant denies most strenuously, that
he ever intended, or said to anyone, and especially, to Wil-
liam R. Eareckson, that this defendant had taken Judge
Jones' note in full payment of said interest, or in lieu of his
mortgage lien. That this defendant was asked by said Wm
R. Eareckson, on the platform of the railroad station at
Ellicott City, whether this matter had been fixed, and this
defendant replied "yes," and nothing more; on the contrary,
this defendant avers that it must appear to any ordinary
mind, that a mortgagee would scarcely release a mortgage
lien and take the personal note of a party who had just sold
all that he possessed; on the contrary, the taking of said note
was for the mutual convenience of both parties, this defend-
ant needed his money and the said Judge Jones was willing
and anxious to accommodate him. And your defendant al-
leges that this is a plain and full explanation of the whole
transaction between the parties concerned, and reiterates,
most positively, that he never intended to relinquish his mort-
gage lien, and insists that the same is valid and subsisting,
the said mortgage and note for accrued interest, being still
unpaid."

The question of estoppel of the defendant by conduct, was
not considered either in the appellees brief on which the case
was submitted on his part, nor in the opinion of the learned
judge below who by his decree dismissed the original and

amended bill, which carried with it the dissolution of the injunction.

The question of estoppel however is the vital question, and the only one which we think it necessary to consider, without intimating any difference of opinion on our part, as to the legal questions considered and determined in the opinion of the lower Court, and in considering this question it will be assumed that the acceptance of Judge Jones' note by Judge Rogers was not in law payment of the interest represented by it, and that Judge Rogers did not intend to relinquish the lien of his mortgage as to that note. But it does not follow that he may not be precluded by what he said and did, from asserting such a lien.

Dr. Eareckson was a competent witness in the case under section 3 of Article 35 of the Code of Public General Laws, and the fact that his agreement of purchase with Judge Jones only required him to assume the interest on this mortgage from October, 1899, when he took possession of the property, and that Judge Jones was to pay it up to that time, and had assured him, it had been paid and adjusted, was a material fact influencing the conduct of Dr. Eareckson, and therefore within the exception to the rule against hearsay evidence as stated in 1 *Greenleaf on Evidence,* sec. 123, where the fact that the declaration was made, and not its truth or falsity, is the point in question. Nor could this evidence be excluded as altering or varying the terms of the written agreement, since it clearly explained what the agreement left in obscurity. Under the agreement with Judge Jones, Dr. Eareckson was entitled to indemnity against this back interest, and when he applied to Judge Rogers for information in regard to it, whether the date of that application was as recollected by either of the parties, he was entitled to know then that Judge Rogers did not intend to release the lien he claimed, and did intend to enforce it against the property of Dr. Eareckson, if Judge Jones failed to perform his contract with Dr. Eareckson. If he had not then settled with Judge Jones, he could have protected himself by withholding that amount from

Judge Jones; and if he had then settled with Judge Jones, he would then have had over three years before the death of Judge Jones in which to have secured the indemnity to which he was entitled, and no one who knew Judge Jones can doubt that he would have protected Dr. Eareckson the moment he knew he needed protection. The fatal mistake made by Judge Rogers was in yielding to the natural and creditable influence of his close friendship with Judge Jones and giving him his promise not to say anything more to Dr. Eareckson about it, and in keeping this promise until after Judge Jones' death, thereby misleading Dr. Eareckson until it was too late for him to secure protection. The keeping of that promise did credit to Judge Rogers' heart, but it was his undoing in the enforcement of this claim against this property. The principles of the law of estoppel are too well established to require either elaborate statement or extended citation of authorities. *Alexander* v. *Walter,* 8 Gill, 251; *Carmine* v. *Bowen,* 104 Md. 204. In the latter case, JUDGE McSHERRY said, citing 16 *Cyc.* 681. "Silence is a species of conduct and constitutes an implied representation of the existence of the state of facts in question, and the estoppel is accordingly a species of estoppel by misrepresentation. Where a person with actual or constructive knowledge of the facts, induces another by his words or conduct to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition to it, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice."

In *Continental Bank* v. *Bank of Commonwealth,* 50 N. Y. 575, approved in *Hambleton* v. *Central Ohio R. R.,* 44 Md. 562, the Court said: "It is not necessary that a party should act affirmatively upon a declaration to claim an estoppel. If he has acted not upon it, but has means in his power to retrieve his position, and relying upon the statement, and in consequence of it, he refrains from using these means, his claim will be upheld." The same principle, touching the right of indemnity, was laid down in *Knight* v. *Wiffen,* L.

R. 5th Q. B. 660, where Mr. Justice Blackburn held that the question was, not whether he would certainly or probably have secured indemnity, but whether he had a *right* to demand it, and had been deprived of that right by the conduct of the defendant on which he relied. And in *Andrews* v. *Clark,* 72 Md. 436, JUDGE ALVEY quoted with approval *Bank* v. *Morgan,* 117 U. S. 96, in which the Court said that where a duty·was cast upon a person, which he neglects or omits to discharge, "whereby another is misled in the very transaction to which the duty relates, he will not be permitted to the injury of the one misled, to question the construction rationally placed upon his conduct by the latter." Mrs. Eareckson was in privity of estate with Dr. Eareckson and the estoppel therefore operates in her favor. *Cecil* v. *Cecil,* 19 Md. 72; *Jones* v. *Rose,* 96 Md. 483.

It follows from what we have said that the decree of the Court below should be reversed, and the cause be remanded for the passage of a decree requiring the defendant to release the mortgage upon payment by Mrs. Eareckson within some reasonable time to be fixed by the decree of the principal sum specified in said mortgage together with interest thereon from October 1st, 1907, the date up to which the interest had been paid by Dr. Eareckson.

> *Decree reversed and cause remanded for a decree in conformity with this opinion. The costs above and below to be paid by the appellee.*