JAWORSKI ET AL. *v.* JAWORSKI ET UX.

[No. 94, October Term, 1952.]

*Decided March 13, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Malcolm J. Coan,* with whom was *Howard Calvert Bregel* on the brief, for the appellants.

*Matthew S. Evans* for the appellees.

HAMMOND, J., delivered the opinion of the Court.

This appeal involves conflicting claims of the descendants of Ludwig Jaworski, who died a widower, as to the respective ownership of various parts of a ten acre tract of land in Anne Arundel County, which had been owned by him. The decree of the Circuit Court for that County, which is complained of, confirmed ownership as to one parcel in a son who occupied a house thereon, which he had built, and denied effectiveness to the attempt made by another son, the holder of legal title as trustee, to effect a unilateral partition among the descendants as he saw fit.

In 1927 Ludwig Jaworski was living in Baltimore with his son, Leon. He and his wife had had five children, namely, John, Elizabeth, Frances( Mrs. Jewer), Leon and Roland. Elizabeth had died in 1918. John died in 1944 or 1945. Leon, Frances and Roland were living in or near Baltimore City. Ludwig had some $500.00

in the Kosciusko Loan and Savings Association, a house in Baltimore, No. 1605 Lancaster Street, and a waterfront property containing ten and a fraction acres in Anne Arundel County. In December, 1927, Ludwig put the savings account in the joint names of Leon and himself, and the next day, conveyed the real estate to Leon by a deed duly executed and recorded. The deed was in fee simple without any reservation of life estates or powers by the grantor, but the understanding was that Leon was to hold the properties as trustee for his father and sister and brother. In July, 1931, Leon, the grantee of the said deed, executed a declaration of trust, to the effect that he held the property for the benefit of his father for life with full power in the father "to sell, mortgage, lease, or otherwise dispose of the remainder, as well as the life estate therein, including disposition by will,". It also provided that after the death of Ludwig, so much of the property as remained should be divided into five equal parts, one-fifth to go to Frances, one-fifth to Roland, and the remaining three-fifths to Leon, all free of trust. This paper was executed with all the formalities of a deed but was not recorded. In April, 1935, Ludwig signed another writing, which purported to change the beneficial remainder interests in the property referred to in the declaration of trust, so as to apparently give Frances and Roland, in equal shares, the three-fifths interest which had been given Leon originally, although the language of the paper leaves it somewhat in doubt as to what was intended. This writing was neither acknowledged nor recorded, although it was witnessed, and none of the parties give it any weight or validity. The case, by common consent, was tried on the assumption that it was not to be considered at all.

This litigation, in substance, involves only the ten acres in Anne Arundel County. The property lies on the north side of Powhatton Beach County Road and has a frontage of 1144.98 feet thereon, binding along its northeast side on Stony Creek for a distance of about

600 feet, and has a depth, northerly from the road, varying from about 200 feet on the easternmost outline to something over 500 feet about the middle thereof. Frances and her husband had erected a shack on the property which had been used on weekends by the whole family. In 1941, there were disagreements between Roland and his family and Frances and her family. Roland wanted a division of the property. As a result, Ludwig, Leon and Frances all told him to hire a surveyor and have him plat a division of the property as the children had staked off their respective claims. Mr. J. Revell Carr of Anne Arundel County was employed by Roland, and in March, 1942, made a plat following the lines the children had staked out, which had been done according to a rough plat Roland had previously made. Leon denies that the property had been staked out but it is undisputed that he worked with Roland and Mr. Carr all day on the property and helped Mr. Carr to secure all the data necessary to prepare his plat. In this division of the property, Leon was allocated two lots, No. 1, containing 1.7 acres, and No. 4, containing 4.09 acres. Frances Jewer and John, her husband, were given two lots, Nos. 2 and 5, containing respectively 0.97 and 1.03 acres, and Roland and Margaret, his wife, were given Lot No. 3, which contained 2.66 acres. If there had been a division precisely according to the declaration of trust, Roland and Frances would each have received 2.09 acres and Leon 6.18 acres. Leon did receive in the Carr division $4/10$ths of an acre less than an exact three-fifths, Frances $9/10$ths of an acre less than her one-fifth, and Roland $5/10$ths of an acre more than his fifth. Roland's lot, on paper, was more desirable because it had more water frontage, but the north and northwest corners of his lot, so the Chancellor found, "are nothing but a deep precipitous gully, so that at least two-thirds of his Creek frontage is practically worthless".

Following the survey, Roland, with the knowledge of all the family, and with the acquiescence and help of Leon, built a house on Lot No. 3, which had been al-

located to him. He spent substantial amounts. immediately after the Carr Plat had been made, and eventually, expended some $9,000.00.

In April, 1943, Roland received a letter from Mr. Noah A. Hillman, a lawyer at Annapolis, advising him that Leon, the month before, had executed a deed to Frances and her husband for "two lots of land as shown on a plat which had been recorded with the deed at Annapolis." These two lots were Lots 2 and 5, as shown on the plat. Roland was advised that Leon was willing to convey to him Lot 3 on the plat and he was directed to remove from Mrs. Jewer's lot any building material and bricks thereon. The plat referred to by Mr. Hillman was one made by J. Edward Hall in November, 1942. The effect of the division of the whole property shown on this plat was to cut off of Roland's lot, as established by the Carr Plat, a strip of land 100 feet or more extending along its entire westernmost outline, so as not only to reduce the area of the lot from 2.66 acres to .82 of an acre, but to cut off its entire road frontage, and tuck it in behind Mrs. Jewer's lot No. 2 at the end of a 16-foot right-of-way. It was proposed, as compensation, to give Roland Lot No. 4 near the west end of the property with a frontage of 141 feet on the County Road. The Chancellor found that the value of this lot would not begin to compensate Roland for the damage caused to his Lot No. 3 by taking away the 100-foot strip and requiring him to use the right-of-way as his only means of ingress and egress.

After receipt of the Hillman letter, Roland referred it to Mr. Eldrige Hood Young, a lawyer in Baltimore who had represented the family for many years, and who had prepared the deed and declaration of trust. Many conferences were held over a period of several years but nothing was accomplished by way of settlement.

Ludwig died in September, 1946 without leaving a will. Some six months later, Roland, having learned that Leon, notwithstanding the settlement conferences, had

executed and delivered a deed of some of the land which Roland was to get under the Carr Plat, to Frances and her husband, and a deed for another part thereof, to Robert Norris and his wife, the son-in-law and daughter of Frances, seemingly as her nominees. Roland then had Mr. Young bring a bill of complaint against Leon and the grantees of the deeds, praying that all conveyances from Leon respecting the properties, including the deeds of 1943 and 1947, be declared null and void and of no effect, and that Leon, Frances and the Norrises be restrained from in any way disposing of any part of the whole property, and that the several parcels of land as set out on the Carr Plat "be declared to be the division of the land therein among the children of Ludwig Jaworski, and that a trustee or trustees may be appointed to make conveyances or grants as therein described and allotted." The decree set aside and declared the deeds null and void and impressed Lot No. 3, containing 2.66 acres of land, with a trust in favor of Roland, and appointed Mr. Young trustee to convey the lot to Roland free and clear of all claims of any other parties. The Court took no action as to the division of the land, other than Lot No. 3, between Leon and Frances, but indicated its willingness to make a division, if the parties so desired.

The appellants in their brief make two explicit and express concessions. One is, that, as found by the Chancellor, "Ludwig's power was about as broad as a power can be. He not only had the right to sell, mortgage, or lease said property in his lifetime, but he could *otherwise dispose* of it during his lifetime, or, by his will, appoint who should take it". Two, is that if Ludwig "with a copy of the Carr Plat before him and knowing all about the subdivision made thereby, expressed to Roland Jaworski his approval thereof and told Roland to go ahead and build his house on Lot No. 3 as delineated on said plat, and that Roland thereafter in reliance thereon erected his house thereon, Ludwig would not thereafter be permitted to repudiate his

action. Also, that in such event, said estoppel *in pais* would bind the privies of Ludwig, to wit, the defendants, Leon Jaworski and Mrs. Jewer".

The appellants assert vigorously that Roland failed to prove the facts assumed in the second concession by the clear preponderance of the evidence, and that a finding of fact by the Chancellor, that they did was clearly erroneous. It is true that there was a conflict of evidence on the point. Roland testified that right after the Carr Plat was made, his father was well pleased and told him to go ahead and build his house. He says Ludwig told him "You know now what belongs to you; you go on and build your house". His testimony is corroborated by his wife and one of his sons. Leon, on the contrary, says that he, unaccompanied by anyone, took a copy of the Carr Plat to Ludwig, who disapproved and said that he, Ludwig, would go on the land and show how he wanted it divided. Leon says further that several weeks later, his father went on the land and made the division, which was subsequently incorporated in the Hall Plat. Frances corroborates Leon as to Ludwig's disapproval of the Carr division and of his approval of the Hall Plat. Mr. Young testified that he went with Leon to see Ludwig, who told him that Frances and her husband had built on Lot No. 2, as shown on the Carr Plat, that Roland wanted to build on Lot No. 3, and that the father said he wanted Frances to have Lot No. 2 and Roland to have Lot No. 3, and that he was not interested in what happened to the rest of the land. Mr. Young's exact testimony as to this meeting, in part, was: "So far as Leon and the old gentleman were concerned when I discussed with them about the deeds, that was perfectly agreeable for Roland to have that lot".

On the evidence, Judge Clark made this finding: "I find, from the evidence before me, that Ludwig told Roland to go ahead and build his house; that he did this after he had been given a copy of the Carr Plat and knew all about the subdivision made thereby; and

that, when Roland went ahead and spent nine thousand dollars ($9,000.00) in doing what Ludwig told him to do, the latter would not have been permitted to repudiate his action had he tried. A father cannot play fast and loose with his children. If he tells one of them to go and build a house on a certain piece of land on the promise to convey the land to the child, he must stick to his bargain".

We think the finding of fact by the Chancellor, who saw the witnesses and the property, was not wrong and that the decree should be affirmed. It is a well established principle in equity that a parol gift from a father to a son, of land on which an entry has been made and money expended, cannot be repudiated. It is said that such a parol gift while not enforceable at law under the Statute of Frauds, becomes irrevocable in equity after a child has taken possession of the land and made improvements of considerable extent. The Courts say that under those circumstances to allow the donor to avoid the performance of his undertaking, would operate as a fraud on the donee. *Hardesty v. Richardson,* 44 Md. 617; *Loney v. Loney,* 86 Md. 652, 38 A. 1071; *Whitaker v. McDaniel,* 113 Md. 388, 78 A. 1. The rules laid down and applied in these cases are recognized in *Williams v. Robinson,* 183 Md. 117, 36 A. 2d 547; *Masters v. Masters,* 200 Md. 318, 332, 89 A. 2d 576, 582. See also 155 A. L. R. 76.

Neither Leon nor Frances can justly complain of the effect of this holding. As has been said, Leon participated in the preparation of the Carr Plat and actually sold Roland the lumber to be used in building his house on the lot given him by the Plat. Frances and her husband were fully aware of the situation and the building of the house, since they themselves used and occupied the shack on the adjoining lot. Leon admits that he saw the house being built on the lot that Roland had picked out. When he was asked if he raised any objection to its being built, his answer was "No, I let him go ahead". This statement applies also to Frances.

One cannot stand by and see another make expenditures for improvements to property to which he has, or later asserts, some claim or title and not give any notice or objection, without losing his right in good conscience in equity to assert his own claim or title against the improvements. *Greenwalt v. McCardell,* 178 Md. 132-138, 12 A. 2d 522; *Machovec v. Shipley,* 171 Md. 339-345, 189 A. 223.

An even broader power of estoppel is that reiterated in *Carmine v. Bowen,* 104 Md. 198, 64 A. 932; *Eareckson v. Rogers,* 112 Md. 160, 75 A. 513; and *Price v. Adalman,* 183 Md. 320, 37 A. 2d 877, to the effect that "He who is silent when he ought to have spoken, will not be heard to speak when he ought to be silent".

Then appellants contend that Roland is barred by laches because he did not bring suit for some three years after he had been notified that Leon asserted a claim adverse to him. During that three years, the parties were making continuous efforts to adjust their differences. If the delay resulted in prejudice, it operated with equal force on each of the parties and hurt none more than another. It is complained by the appellants that Roland waited until his father's death before bringing the suit so that the father's testimony could not be had. The straw that broke the camel's back and precipitated the filing of the suit, were the deeds of 1947 made by Leon after his father's death, when he would have had a more colorable right to so act than he had in 1943 when the first deed was executed, at a time when his father was living. In any event, if the appellants had desired to have Ludwig's testimony in the controversy, the Courts were open to them and they could have brought proceedings for the establishment of the rights claimed by them at a time when Ludwig could have testified. We see no merit in the contention of the appellants as to laches.

*Decree affirmed, with costs.*