ISAAC KELLEY *vs.* WILLIAM TODD.

January Term, 1866.

1. At the common law where land is leased for a certain number of years, and the period of its termination is fixed and certain, and the lease is silent as to who is entitled to the way-growing crop on the land at the end of the term, the off-going tenant is not entitled to such crop; but where the lease recognizes the right to *sow* in the last year of the term, and the tenant is restricted to the cultivation of certain portions of the land and pays an equal annual rental sum for its use, he has a right to *reap* the way-growing crop—where the lease is silent as to who is entitled thereto.

2. A. W. K. leased a farm to T. for three years, beginning April 1st, 1861, and ending April 1st, 1864, for an equal annual rent of 500 dollars. The lease provided that in the fall of the last year the tenant was to sow a certain field in wheat and timothy. T. vacated the land on the 1st day of April, 1864, and I. K. entered as tenant under A. W. K. I. K. reaped and gathered the field of wheat sowed by T. in the fall of 1863, in the following July. HELD: That T. is entitled to recover the value of the wheat from I. K.

3. A case distinguished from *Harris* vs. *Carson*, 7. Leigh, 632.

On the 25th day of July, *William Todd* instituted an action of trover and conversion in the circuit court of *Ohio* county, against *Isaac Kelley, Aaron Kelley* and *A. Wilson Kelley;* and filed his declaration at the rules on the last Tuesday of the same month, claiming that he was, on the 15th day of July, 1864, lawfully possessed of 2,000 dozen sheaves of wheat and casually lost the same; and that the same came to the defendant's possession on that day by finding, &c.

The defendant, *Isaac Kelley,* pleaded not guilty, and the case came on for trial at the May term, 1865. The jury found a verdict of 274 dollars and 50 cents damages against *Isaac Kelley,* and not guilty as to the others.

On the trial of the cause the plaintiff offered in evidence

*He was absent on account of sickness, and *N. Harrison,* judge of the IX circuit was called to the bench.

a lease from *A. Wilson Kelley*, to himself, for a certain farm in the county of *Ohio*, "for a term of three years, commencing on the 1st day of April, 1861, and ending on the last day of March, 1864, yielding rent therefor during said term, 500 dollars per annum, payable semi-annually, in equal installments on the first days of October and April. Said *Todd* shall be restricted in the cultivation of said farm as follows, that is to say: the first year he is to sow in small grain the stack field, which was formerly in blue-grass sod, and to sow the same field in wheat and timothy in the fall. He is to put the meadow south of the house and the young orchard in corn, the first year, taking proper care to preserve the trees in the orchard. The second year he is to cultivate the meadow north of the wood's pasture, in corn, and the following spring to sow the same field in barley, and in the fall of that year to sow the same field in wheat and timothy. The third year he is to raise corn in the field north of the field last before described, and in the field south of and adjoining the field to be put in corn."

There were other covenants in the lease in relation to timber for repairing fences, and entering in default of payment of rent, &c.

The defendant admitted the sowing of the wheat provided for by the lease, in the third year; and the plaintiff proved that he, (defendant,) as in-coming tenant, had cut, reaped and gathered the wheat so sowed by the plaintiff. The defendant then moved the court to construe the lease, and to decide whether the wheat in question belonged to the plaintiff: but the court declined to do so and decided that it was a question of fact for the jury to decide whether the wheat was sowed for the plaintiff or defendant. To this refusal and decision the defendant excepted, which constituted his first bill of exceptions.

The defendant then moved the court to instruct that, though it was proven that the plaintiff sowed the wheat during the fall of the year 1863, and the fall next preceding the expiration of the lease, and in the field mentioned in the clause of the lease making provisions for the same, and that

the defendant, as in-coming tenant, reaped and took the same, yet the lease did not give the wheat to the plaintiff, or the right to reap it, or to recover it in the pending suit. The court refused the instructions, and the defendant again excepted. Judgment was given on the verdict. The defendant applied to this court for a supersedeas, which was granted.

*Z. Jacob*, for the plaintiff in error.

He argued the following points, which were assigned in his petition for a supersedeas as error.

*First*, That the court erred in refusing to construe the agreement.

*Second*, That the court erred in deciding that it was a question of fact for the jury.

*Third*, That it was error to leave it to the jury to decide whether the wheat was sowed for the plaintiff or defendant.

*Fourth*, That the court erred in refusing to give the instructions requested.

On this latter point he held the action of the court below clearly wrong. In *Harris* vs. *Carson*, 7 Leigh, 632, judge *Cabell*, who delivered the opinion of the court, said:

"There is nothing in the lease purporting to give to the tenant any interest in the land, or in the crops upon it, after the termination of the lease;" that "the lease having a fixed and certain period for its termination, it is clear beyond doubt that the *off-going* tenant had no right at common law to any crops growing on the land after the termination of the lease, although sown during his possession." (Page 637.)   In this case, it is clear that the written lease restricted *Todd* as to the manner of cultivation, and how or what crop he was to leave on this particular parcel of ground at the end of the lease. It was meadow when the lease commenced, and he was to leave it sowed in *wheat and timothy*. Why? Simply that it might be meadow again. And this clause requiring him, the fall before the lease ended, to sow it down "in wheat and timothy," was nothing more nor less than the agreed method between the landlord and tenant,

prescribing *how* it was to be again put down in meadow; and this is a common mode of putting plowed land down in meadow. The lease says that "this clause, and some others of like kind," was *in restriction* of how *Todd* should cultivate the farm; but to give it the effect here contended for by defendant in error was, in fact, to *enlarge Todd's* terms.

This lease does not say that *Todd* was to have the wheat, or the right to cut it. If he might cut the wheat, why not also the grass or timothy? In *Harris* vs. *Carson*, there was a written lease, and with apparently stronger clauses in favor of the tenant as to the *way-growing* crop than this one has. In this case judge *Cabell* says, on page 633: "But as to the question whether the tenant should be entitled to the crop which may be growing on the demised premises at the expiration of the contract, the *lease was wholly silent.*"

So here. As *Todd's* lease and right expired, by *his* agreement, on the 31st of March, 1864, to give him rights till July afterwards, and to take the wheat, required that the contract *should say so.* He sowed this wheat because his contract bound him to do so, and his agreement to do so was part of the consideration which led the landlord to give him the lease. Such a contract was natural and proper, and to the benefit of husbandry; but to make it give the wheat, and the use of the land, after the expiration of the term, to *Todd*, is to *violate* the rules of law, and *wrong* the lessor. As it is a fixed and settled principle of law with us, that the tenant is not entitled to the crop which may be growing at the *expiration* of the lease, he cannot, because he sows, take it, unless his contract says so. Comyn on Landlord and Tenant, p. 359, marginal page.

*D. Peck*, for the defendant in error.

The terms of the lease clearly entitle the defendant in error to the wheat sued for in the court below. Without any special agreement to that effect, however, the out-going tenant is entitled to the crop sowed by him whilst a tenant, by the law and custom of the country. *Foster* vs. *Robinson*, 6 Ohio State Rep., 90; *Stultz* vs. *Dickeg*, 5 Binney, 285;

*Dorsey* vs. *Eagle*, 7 G. & J., 331; *Templeman* vs. *Biddle*, 1 Har'n Rep., 522; *Van Ness* vs. *Packard*, 2 Pet. Rep., 148; *Wigglesworth* vs. *Dallison*, Doug. Rep., 190; *Hutton* vs. *Warner*, 1 Meeson & Welsby, Rep., 466.

BERKSHIRE, President. This was an action of trover and conversion by the defendant in error, against Isaac Kelley, the plaintiff in error, Aaron Kelley and A. Wilson Kelley, in the circuit court of Ohio county, for 2,000 dozen sheaves of wheat. There was a verdict and judgment against the plaintiff in error for 247 dollars and 50 cents, and a verdict of not guilty as to the other defendants. The defendant in error on the 5th day of April, 1861, leased of the said A. Wilson Kelley, a certain tract of land in Ohio county, containing about two hundred acres, for the term of three years, commencing on the 1st of April, 1861, and ending on the 31st of March, 1864; for which he was to pay as rent 500 dollars per annum. Under this lease the defendant in error sowed the wheat in controversy, in the fall antecedent to the expiration of the lease, and the same was cut and gathered by the plaintiff in error, as the in-coming tenant in the summer following. On the trial of the cause, the plaintiff in error filed two bills of exceptions taken to the opinion of the court. *First,* For refusing to *construe* the lease and leaving it to the jury to determine whether or not he was liable under the same. *Second,* For refusing to instruct the jury that the plaintiff in error was *not* liable under the lease, and that the same did *not* give the wheat to the defendant in error, nor the right to reap and recover the same.

As the question whether or not, the defendant in error was entitled to the way-growing crop in controversy, under the provisions of the lease, was a question of *law*, and not of fact to be left to the jury, it was the duty of the court, when called on in the proper manner, to have construed it accordingly: but without expressing any opinion as to whether the court was bound to proceed to construction in the form the question was presented, I am of opinion that if there was any error in so refusing, it was cured or rendered immate-

rial by the second instruction asked and refused, which involved, substantially, the same proposition, as by over-ruling and refusing the last instruction the court did thereby give its construction of the lease, and the whole controversy turns on the correctness of this ruling.

Had the defendant in error, under the provisions of the lease, the right to the way-growing crop at the expiration of the same?

At the common law where land is leased for a certain number of years, and consequently the period of its termination is fixed and certain, and the lease is silent as to who shall be entitled to the growing crop on the land at the end of the term, the off-going tenant is not entitled to such way-growing crop. *Harris* vs. *Carson*, 7 Leigh, 632.

In *Mason, &c.* vs. *Moyers*, 2 Robinson, 606, this doctrine is re-affirmed; but the court distinguishes that case from the former, and held that the tenant under the provisions of the lease in the latter case was entitled to the way-growing crop. The claim in the lease in this case, under which the court sustained the tenant's right to the way-growing crop, is in substance, that the tenant was *restricted* to the cultivation of only one-half of the land in any one year of the term, and was to leave one-half of the same clear at the termination of the lease. The lease was for the term of three years, unless the land should be sooner sold under a decree of the court at the suit of the creditors of the lessor; and in such event the tenant was to surrender the possession at the end of the term next after such sale, and the tenant was to pay 300 dollars per annum.

Judge Baldwin, in his opinion in the case says: "By the true construction of this lease the tenant was entitled to the way-growing crop, whether it expired by the efflux of time or at the end of a previous year, by reason of the event contemplated and provided for by the parties." And in the same case, judge Allen, after stating that the premises were leased by the tenant for the purpose of cultivation, and arguing to show that it was fairly *implied* from this stipulation or clause in the lease, that it was the intention of the

parties that the tenant should have the privilege of seeding in the fall previous to the termination of his lease, says, "unless the tenant was entitled to the way-growing crop, he would have bound himself to pay a rent of 300 dollars, annually, for three years, and have been entitled to cut but two crops of small grain from which to make it. Such a contract would have been unequal; and though it was competent for the parties to enter into it, the circumstances are entitled to some consideration in ascertaining the meaning of the terms actually contained in the written agreement." And again, "the lease *restricts* the tenant from cultivating more than one-half of the cleared land in any one year:" and yet again, after adverting to the fact that the only crop, that could be growing on the land at the end of the lease on the first of April, was the wheat crop sowed by the outgoing tenant of the fall previous, he concludes: "If the contract recognized the right to *sow*, the right to *reap* would follow. And in this mode the tenant would be entitled to take the three crops for which he was to pay the three years rent."

Now the provisions of the lease under consideration, as it seems to me, are very similar to those of the lease in the case just cited: and applying the principles of construction therein declared, it would seem difficult to distinguish them, and to withdraw this case from the reasoning of the court in the case last above cited. In our case, as in the other, the lease was for three years, for the purpose of cultivation. The tenant was to pay a certain cash rent for each and every year: he was also *restricted* to the cultivation of a *part* of the cleared land, and the fields to be cultivated indicated and described in the lease, as well as the mode and manner of their cultivation: and it was *expressly* stipulated in the lease that, the defendant in error should sow the wheat in controversy (together with timothy,) in the fall antecedent to the expiration of his lease.

It was very earnestly insisted by the attorney for the plaintiff in error that, it was a part of the *contract* that the defendant in error should sow this wheat as well as the tim-

othy, for the benefit of the lessor, and that the defendant in error was no more entitled to the wheat than the timothy sowed with it. In this view I am unable to concur. Such a construction, it appears to me, would be too harsh and unreasonable, and would defeat the obvious intention of the parties as fairly implied from the provisions of the contract. The defendant in error's *right* to sow the particular field in the fall previous to the end of his term does not, as in the case of *Mason, &c.* vs. *Moyers*, result from *implication*, but is expressly reserved to him: and though *peremptory* in form, it was evidently intended as a privilege for his own benefit. Otherwise we must conclude that the defendant in error bound himself to furnish seed, cultivate and sow the wheat crop for the last year for the exclusive benefit of his landlord, and yet pay him the full rent for that year. I cannot suppose he intended to do so. The clause in the case which requires it, as the plaintiff in error insists, it will be perceived is in the precise language of the previous clause which designates the fields to be seeded in the fall of the first year of the lease, and must, of course, import the same thing—namely, a *right* or privilege secured to the tenant to seed in the fall of each year for his *own* benefit.

This view, I think, also derives some force from the fact that, by the *restrictions* in the lease, the defendant in error was not allowed to sow any wheat in the fall of the second year of the lease, so that, *non constat* he would be entitled to but one crop of wheat during the three years of his lease, if we held that he is not entitled to the one in controversy. The fact that the timothy was to be sown with the wheat, does not, in my opinion, alter the case. It is the usual mode of cultivation and required by good husbandry, and the tenant therefore, was required to sow the timothy, as an *incident* to the wheat, the last as well as the previous years of the tenancy. I am of opinion that the judgment should be affirmed.

The other judges concurred with the President.

JUDGMENT AFFIRMED.