# CHARLES G. CARMINE vs. JOHN W. BOWEN.

*Landlord and Tenant—Right to Away Going Crops—Estoppel by Si-
lence—Estoppel of Landlord to Deny Right of Tenant to Harvest
Crops Maturing After Expiration of Tenancy—Injunction.*

The general rule is that when the renting is for a time certain, the tenant
is not entitled to out-going crops, which mature after the termination
of the lease, unless such right is given by the custom of the country, or
by express agreement.

A stipulation in the lease of a farm for years that the tenant shall farm
the fields in rotation in a proper manner, does not amount to an ex-
press agreement that the tenant shall be entitled to re-enter upon the
premises for the purpose of harvesting and removing crops which ma-
tured after the expiration of the tenancy.

A party is equitably estopped to deny the existence of a right claimed by
another, when he was silent at the time the claim of such right was
made, and his silence induced the other party to believe that no oppo-
sition thereto would be made, and he consequently altered his position,
and the circumstances are such that it would be a fraud upon the latter
party to allow the former to deny what his silence induced the other to
act upon.

A lease of a farm for a money rent for three years, beginning on March
1st, provided that the tenant should farm the fields in rotation in a proper
manner. In the summer preceding the expiration of the tenancy, because
the tenant said that he would not sow grass seed that year, the landlord
determined for the first time to set up the claim that the tenant should
not gather crops maturing after the expiration of the tenancy, and noti-
fied him to that effect, while the tenant claimed that he was entitled to the
away going crops by the custom of the country, and also because the
lease bound him to cultivate the fields in rotation. Subsequently, the
tenant concluded to sow grass, and was actually engaged in doing so,
when the landlord, coming to the premises, was informed of that fact,
and also that the tenant was sowing seventy acres of wheat and rye
which would not mature until after the termination of the lease. The
tenant said "I don't anticipate any trouble in the cutting of my crop."
To this the landlord made no reply. *Held*, that the landlord's silence
under these circumstances must be construed as an acquiescence in the
claim of the tenant, and he is estopped to deny the right of the tenant
to gather these crops.

When a tenant's right to gather crops sown by him and maturing after
the expiration of his tenancy depends upon the conduct of the landlord

amounting to an equitable estoppel to deny such right, equity has jurisdiction to protect the tenant by an injunction restraining the landlord from interfering with the tenant's entry upon the premises for the purpose of harvesting the crops.

*Decided November 1st, 1906.*

Appeal from the Circuit Court for Baltimore County (BURKE, C. J.)

The cause was argued before MCSHERRY, C. J., BRISCOE, BOYD, SCHMUCKER and JONES, JJ.

*John I. Yellott* and *Jacob J. H. Mitnick*, for the appellant.

*Z. Howard Isaac* and *Ernest C. Hatch*, for the appellee.

MCSHERRY, C. J., delivered the opinion of the Court.

This record has been brought up from the Circuit Court for Baltimore County sitting as a Court of equity. By an order of that Court an injunction which prohibited the appellant, the landlord, from interfering with the appellee, the tenant, in the harvesting and removal of a wheat and rye crop was made perpetual, and from that order this appeal was taken. The facts which need be stated are briefly these: In the month of December, nineteen hundred, the appellant rented to the appellee a farm situated in Baltimore County, and containing about two hundred and seventy acres, for a term of three years to begin on the first day of March in the following year, at and for a money rent of seven hundred dollars annually. By the terms of the written agreement the appellant stipulated to furnish three hundred dollars worth of bone fertilizer each year, and the appellee bound himself "to farm the fields in rotation in a proper manner." When the appellee took possession of the premises in the spring of nineteen hundred and one there was no wheat or rye crop growing on the farm, the former tenant having failed to sow either the one or the other. In August, nineteen hundred and three, the appellant gave to the appellee a notice in writing to remove from and quit

the farm on the first day of the ensuing March, that being the day upon which the term was to end. A few days after that notice had been given the appellant wrote a letter to 'the appellee in which he stated "I understand that you are making preparations for sowing your fall crop which will not mature until after the expiration of your lease of the farm.   *   *   * I understand also that it is not your intention to sow any grass seed. I do not admit that in any event you will have the right to remove any crops after the expiration of your lease, and will stand on my rights in this matter, whatever they may be. But I particularly warn you, that I will hold you strictly to the consequences of your failure to sow grass seed, and if it should prove that the failure on your part to sow grass seed will defeat your right (if you otherwise have it, and which I do not admit, as I have above stated) to remove the outgrowing crops after the term, you will have yourself to blame for it." In the latter part of May, nineteen hundred and four, the appellant sent another letter warning the appellee not to undertake to cut or take away any of the crops then on the farm "or which shall hereafter mature thereon." Prior to the date of this last letter the term of the appellee as tenant had expired and he had in obedience to the notice given him and pursuant to the stipulations of the lease, vacated the farm on March the first. The appellee sowed in the fall of nineteen hundred and three—that is, in the fall preceding the expiration of his tenancy on March the first, 1904—about fifty acres of wheat and twenty acres of rye, which matured and ripened after the end of his term. It further appears from the bill, the answer and the testimony, and it is therefore undisputed, that after about six acres of wheat had been sowed in the fall of 1903 the appellant went to the field and inspected the work and inquired how much timothy was being sowed, and when told by the appellee that the quantity was a strong peck to the acre, expressed himself as satisfied. At the same time the appellee said to the appellant, "I don't anticipate any trouble in the cutting of my crop," to which the appellant made no reply. The crop thus alluded to was the one now in contro-

versy. There seems to have been some jar or friction about the sowing of grass seed and about the quality of the fertilizer furnished and the unwillingness or supposed unwillingness of the tenant to sow the grass seed, doubtless induced the landlord to claim the away going crop. Indeed, this is practically admitted by the appellant, for he was asked: "When did you make up your mind that Bowen should not come back and harvest that crop?" and he answered: "The very hour he told me he would not sow grass seed." It is reasonably clear, then, that the intention of the landlord to claim the crops was, the direct result of the tenant's intimated purpose not to sow grass seed; and whilst the landlord did not admit the right of the tenant to return after the expiration of his lease and secure the away going crops, he strongly implied in the letter of August before the crops were sown, that a failure to sow grass seed would defeat the tenant's right to remove the crops after the term had ended. But the tenant did sow the grass seed, and at the very time he was putting it in the ground in accordance with the insistence of the landlord he remarked to the latter that he, the tenant, anticipated no trouble in cutting the crop he was then sowing; to which remark the landlord made no reply.

When the appellant refused to allow the appellee to enter upon the premises and to harvest the crops in the summer of 1904, though every dollar of the money-rent had been paid by the tenant before the expiration of the term, the appellee filed a bill in the Circuit Court for Baltimore County in which he prayed for relief by way of injunction to restrain the appellant from interfering with his entering upon the premises and his harvesting and removal of the crops. The tenant bases his claim to the crops upon the terms of the lease and upon the custom of the country under which an away-going tenant is allowed, it is asserted, when the lease is for a definite period, to return and secure the crops sowed by him during the last year of his tenancy though they mature after the term has expired. There is another ground for relief which was not relied on in the bill nor pressed at the argument but to

which we will allude later on.  The appellant, the landlord, denies that the tenant is entitled to the crops in question under any term or provision of the lease.  He asserts that there is no such custom of the country as is set up by the tenant and he, in addition, expressly challenges the jurisdiction of a Court of equity to decree relief in this proceeding.

The general doctrine of the common law is well settled that where the renting is for a time certain the tenant is not entitled to the outgoing crops, which mature after the termination of his lease, unless by the custom of the country or by express agreement with his landlord. *Taylor's Land. and Ten.*, secs. 534-536; *Dircks v. Brant*, 56 Md. 502. The reason for the rule as given by LORD MANSFIELD in *Wigglesworth v. Dallison*, 1 Doug. 201, is because it was the tenant's own folly to sow when at the time of sowing he knew that his term would expire and he would be out of possession before he could reap.  But the reason of the rule, and hence the rule itself, ceases when a general custom to the contrary prevails, or when an express agreement secures to the tenant the right to enter and cut the crops after the expiration of the term; because when such a custom prevails it is read into the contract of leasing and the latter must be interpreted in the light of that custom, and where there is an express contract reserving to the tenant the right to remove the away-going crops the rule of law is by the agreement of the parties waived and dispensed with.  Inasmuch as it is the folly of the tenant to sow when he knows he cannot reap, since he has no interest in the land nor in anything which savours of the realty after the expiration of his term of tenancy, he has no right to enter and remove the crops which mature after his tenancy has ended, unless that right is reserved to him by operation of law, by custom or by express agreement.  If the tenancy is of *uncertain* duration the reason of the rule does not apply, because when he sows he does not definitely know that his term will end before the maturing of the crops.  He would not be guilty of folly in sowing in such an instance.  In such an instance he is entitled to emblements. *Taylor Land. and Ten.*,

sec. 534. The case of *Kelly* v. *Todd*, 1 W. Va. 197, cited to sustain the right of the tenant to remove the away-going crops after the termination of a lease for a definite period is not in accord with *Brant* v. *Dircks*, 56 Md., *supra;* because owing to the peculiar terms of the lease in *Kelly* v. *Todd*, the Court held that there was an *implied* right accorded to the tenant to remove the crop, whilst in this State under the ruling in *Brant* v. *Dircks*, an agreement to be effective in securing to the outgoing tenant the crops which mature after the tenancy has ended must be an *express* agreement. The only terms contained in the lease before us which are relied on to evidence an agreement on this subject are found in the sentence which reads: "Said Bowen agrees to farm the fields in rotation in a proper manner." However strongly that clause may imply that the tenant bound himself to sow the wheat and rye in the fall prior to the end of his lease, it does not, we think, embody an agreement on the part of the landlord that he should be entitled to enter upon the premises and har-vest and remove the crops after the tenancy had ceased to exist. It certainly does not amount to an *express* agreement to that effect.

Whilst there is a mass of evidence on the subject of custom, the testimony is by no means satisfactory, and there will be no occasion to determine whether it is sufficient or inadequate to establish the alleged custom, inasmuch as there is another ground upon which an affirmance of the decree or order making the injunction perpetual may be safely rested. Though the general rule as to the right of the outgoing tenant who holds for a definite term to return and remove the crops which were sowed by him during the term but which matured after the end of the term, is as stated above, yet though there might be no express agreement and no custom reserving that right to him, there may, nevertheless, be other circumstances that *in a Court of equity* will estop the landlord to claim the crop which but for such circumstances he would be entitled to hold.

It has been very justly and forcibly observed that there is

a negative fraud in imposing a false apprehension on another by silence where silence is treacherously oppressive. In equity, therefore, "Where a man has been silent when in conscience he ought to have spoken, he shall be debarred from speaking when conscience requires him to be silent." *Harris* v. *Am. Bldg.*, *&c.*, *Ass.*, 122 Ala. 545. Silence is a species of conduct and constitutes an implied representation of the existence of the state of facts in question, and the estoppel is accordingly a species of estoppel by misrepresentation. 16 *Cyc.* 681, note 10. When the silence is of such a character and under such circumstances that it would become a fraud upon the other party to permit the party who has kept silent to deny what his silence has induced the other to believe and act upon it, it will operate as an estoppel. 16 *Cyc.*, 756. Where a person with actual or constructive knowledge of the facts induces another by his words or conduct to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice. *Ib.* 791, and cases in note 87. Even when the statute of fraud has been relied on, the equitable doctrine of estoppel has been enforced to prevent fraud. *Goldman* v. *Brinton*, 90 Md. 359.

It will be remembered that the tenant paid as rent for the farm during the three years of his tenancy the total sum of twenty-one hundred dollars, and if, for any reason, he should be deprived of the crop now in controversy he will have received but two crops in return for his outlay. It may be that he supposed there was a custom which entitled him to the away going crops; or, that he put faith in the prevalent notion that he who sows may reap; but however this may be, there can be no doubt he believed, when he signed the agreement to rent, that he would be entitled to sow during, and to reap after, the third year similar crops to those which, by farming the fields in a "proper manner," the land would yield the first and second years of the tenancy; inasmuch as he was required to pay the same amount of rent for his occupancy of

the land during the third year as he was charged the two pre-
vious years when confessedly he owned the crops. It is evi-
dent, too, that this was the understanding of the landlord
when the lease was executed, since, as has been stated, he ad-
mitted in his testimony that he for the first time concluded to
claim the away going crops when the tenant informed him that
he, the tenant, would not sow grass seed—and that occurred
in the summer preceding the end of the term. It may there-
fore, be considered as reasonably certain that both parties to
the lease contemplated when the agreement of rental was en-
tered into that the tenant should have the away going crops.
And this conclusion derives support from that term of the
agreement which bound the tenant "to farm the fields in rota-
tion," since the farming of the fields in rotation implies that
crops should be sowed each year. Whilst the obvious un-
derstanding and the implication above indicated are not the
equivalent of an express agreement reserving the growing
crops to the out going tenant, they none the less *in equity* fur-
nish a part of the basis upon which the doctrine of estoppel
may be made to rest. Whilst the letter which has been
quoted, expressly denies the right of the tenant to remove the
away going crops, it is evident from its whole contents that
the denial of that right was placed by the landlord upon the
refusal of the tenant to sow the grass seed; otherwise there
would be no significance in the sentence which warned the
tenant that he would have himself to blame if it should prove
that his failure to sow grass seed would defeat his right to
remove the away going crops. After the receipt of that letter
the tenant not only concluded to sow the grass seed, but ac-
tually commenced to do so and was engaged in the work of
drilling it in with the wheat when the landlord approached
him in the field and held the conversation which has been nar-
rated. It was whilst the tenant was doing the very thing
which by the terms of the letter he naturally believed was the
thing that entitled him to remove the crop he was then sow-
ing, that he remarked to the landlord "I don't anticipate any
trouble in the cutting of my crop." This observation taken

in connection with the letter, with the previous dispute about sowing the grass seed and with the fact that the tenant had receded from his former position and was then doing what he had at first declined to do, obviously meant precisely the same thing as if he had said to the landlord: As you have intimated that my right to re-enter after my term has expired and to cut and secure the crops I am now sowing may depend on my sowing grass seed, I have abandoned my intention not to sow grass seed and I am sowing a strong peck to the acre. Since that is a compliance with your wishes, I don't anticipate any trouble in the cutting of this crop. I don't suppose you will interpose any objection to my doing so. The appellant made no answer whatever. Is his failure to reply, to be treated in a Court of equity as a re-affirmance of his intention to claim the crop, an intention which was formed for the first time when the tenant refused to sow the grass seed; or, is his silence to be considered as an acquiescence in the claim of the tenant? The circumstances and the situation all clearly indicate that it was his duty to speak; and as he was silent when in conscience he ought to have spoken, he must be debarred from speaking now when conscience requires him to be silent. His silence in the circumstances mentioned, if it were permitted to operate as a re-affirmance of his prior repudiation of the tenant's claim, would become, or would result in a fraud upon the tenant, because that silence induced the tenant to believe and act in a way which he would not have believed and acted but for the apparent acquiescence implied in the landlord's failure to speak. In view of the manifest understanding of both parties at the beginning of the tenancy with respect to the tenant's rights as to away going crops as already pointed out; and in view of the further fact that a denial of that right would compel the tenant to pay full rent for the third year though he reaped no return therefor; when the tenant complied with the demand to sow the grass seed, it became the duty of the landlord when interrogated, to speak frankly if he did not wish his silence to be considered in a Court of equity precisely as the tenant was warranted in

interpreting it, viz: as an acquiescence in the claim of the tenant—a claim which both landlord and tenant impliedly recognized at the beginning of the term, and which was only disputed when a condition arose which was subsequently abandoned. Having been silent when he ought to have spoken, the landlord, will not be permitted to speak when he ought to be silent. He will not now be allowed to assert a claim which he failed to make at a time when a spirit of frankness and fair dealing required him to reveal it, if he honestly thought he was entitled to it. He must be held to be estopped to deny what he tacitly admitted. Whatever rights he may have had he is estopped to assert in a Court of equity, and the Circuit Court was right in restraining him by injunction from interfering with the tenant, if the Court had jurisdiction to grant the relief which it gave. This brings us to the only other question in the case—and that is, Did the lower Court have jurisdiction to grant and then to make perpetual the injunction which was issued?

"The jurisdiction to grant injunctions restraining acts in violation of trusts and fiduciary obligations, or in violation of any other purely equitable estates, interests or claims in and to specific property, is really commensurate with the equitable remedies given to enforce trusts and fiduciary duties, or to establish and enforce any other equitable estates, interests or claims, with respect to specific things, whether lands, chattels, securities, or funds of money, or to relieve against mistake or fraud done or contemplated with respect to such things. In all such cases the question whether the remedy at law is adequate cannot arise; much less can it be the criterion by which to determine whether an injunction can be granted; for there is no remedy at law. Since the estate, interest or claim of the complainant is purely equitable, it is exclusively cognizable by equity; and if its existence is shown, a Court of equity not only has the jurisdiction, but is bound to grant every kind of remedy necessary to its complete establishment, protection and enforcement according to its essential nature." 3 *Pom. Eq.*, sec. 1339. After the expiration of the term of the ten-

ancy the legal title to the land upon which the crops were growing being in the landlord, the legal title to the crops was likewise in the same individual; and whatever right or title the tenant had to those crops was essentially an equitable right or title. In addition to this the tenant's right resting as it does upon an equitable estoppel is a right peculiarly cognizable by a Court of equity. For the protection of such an equitable interest or right a Court of equity is the appropriate forum. Under the circumstances which have been stated we entertain no doubt as to the jurisdiction of the Court to protect by injunction the equitable interest and right of the tenant; and as the facts justified the Court below in granting the relief which it decreed its order will be affirmed with costs.

*Order affirmed with costs above and below.*