## BALTIMORE CITY COURT.

Filed September 18, 1928.

LOUISE H. ROBINSON, ADMINIS-
TRATRIX, ETC., AND AS
ASSIGNEE,

VS.

THE METROPOLITAN LIFE INSUR-
ANCE COMPANY, A COR-
PORATION.

*Ralph Robinson* for plaintiff.
*W. Hall Harris & Son* for defendant.

**STEIN, J.—**

In support of the motion for a new trial, defendant's counsel urged:

A. That, having rejected all prayers offered, the Court should have instructed the jury.

B. That, while the plaintiff had permission at the trial to amend, it did not do so; and the jury in their deliberations did not have the amendment authorized.

C. That, while the parties agreed in open Court that certain documentary evidence should be supplied, that was not done before the verdict.

D. That the Court erred in not granting the prayer for a directed verdict for the defendant.

Objections A, B and C were made for the first time at the argument on the motion for a new trial.

### A.

The law permits, but does not compel the Court to volunteer instructions to the jury.

Poe's Practice, Tiffany Ed., Sec. 292, folio 253.

### B.

In asking permission to amend, plaintiff's counsel explained in open Court, in the presence and hearing of the jury, the terms of the amendment to be made; so that the jury knew the nature thereof.

### C.

This agreement was made in open Court; it included an agreement that the necessary writing could be put in at any time plaintiff's counsel wished; and that, in the meanwhile, the case should go on and the plaintiff's counsel could and did use his copy of the writing.

### D.

This involves the correctness of the Court's refusal to grant the defendant's demurrer prayer, offered at the close of the whole case. Its discussion requires a summary of such of the evidence at the trial that tends to show defendant's liability.

The suit is to recover on two of the defendant's insurance policies; was tried on an amended declaration filed November 14, 1927; consisting of the six common counts and two special counts; to which two general issue pleas, and a special plea of payment, were filed. The testimony taken at the trial tends to show the following, viz:

That the defendant, a life insurance company, issued on the life of Laura F. Dorsey, two life industrial insurance policies; the premiums on which were payable weekly; the first policy is dated November 6, 1911; in it Eliza Dorsey, the mother of the insured, is the named beneficiary; the other policy is dated March 22, 1920; the beneficiary in it is not named, but is described as the insured's "executor or administrator." The insured died intestate on April 23, 1926, when each policy was in force; the amount then payable under the first policy to the mother, as beneficiary, was one hundred and forty-six dollars; the amount then payable under the second policy to the beneficiary, the insured's executor or administrator, was two hundred and twenty dollars. Each policy contains the "facility of payment clause," which, among other things, authorized the company:

"To pay any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured or for his or her burial. And the production of a receipt signed by either of said persons shall be conclusive evidence that all claims under this policy have been satisfied."

The mother, Eliza Dorsey, who became Eliza Dorsey Messick, survived the insured; as did Warren Crockett, with whom the insured lived, and who, in the proofs of death, is called her husband.

For some years immediately before the insured died the mother was an inmate of the Shelter for Aged and Infirm Colored Persons, located in this city at 517 West Biddle street; which "Looks after old colored women until they die, and pays their funeral expenses and everything of that kind."

After the insured died, Warren Crockett gave to the undertaker who buried her the two insurance policies declared on and the book containing the receipts for the premiums thereon;

these all of which were given to Miss Laura H. Robinson, the president of the board of managers of the Shelter, either by the coroner, who held an inquest over the body of the insured, or by the above-named undertaker. Miss Robinson took them and with Mrs. Harrison, one of the managers of the Shelter, went to the defendant's office in the Munsey Building, this city; saw there first a young woman clerk; then an elderly man whom "we" understood was a manager and "who understood exactly what we came for," while there Miss Robinson told those whom she saw that:

"She was claiming under the policies for the insured's mother—that they wanted to put in the claim under the policies for the insured's mother—that they wanted to put in the claim promptly, because a colored man named Warren Crockett, whom they did not think had a proper claim, might put in a claim himself."

The manager told Miss Robinson and her companion "that they would have to wait about ten days before it would be paid and that we must surrender the policies and premium book." Miss Robinson refused to do this unless she was given a receipt therefor; which was given to her by the young woman clerk; Miss Robinson also testified that she and Mrs. Harrison then left; "in good faith expecting to be paid"; that relying on getting the money from the defendant, she thereafter paid the undertaker one hundred and forty dollars on account of the insured's funeral expenses, which sum she paid out of the proceeds of another policy on the life of the insured. Miss Robinson testified she "would not have surrendered the policies and book; would not have paid this one hundred and forty dollars on account of funeral expenses, if we had not expected some payment to be made to them."

Thereafter the defendant paid Warren Crockett the amounts due under each policy, who paid the undertaker the balance due on the funeral expenses. The young lady clerk, above referred to, testified for the defendant that she did not recognize either Miss Robinson or Mrs. Harrison in Court; that she gave the receipt for the policies and book; that she did not make any statement about the person to whom the money due would be paid; that she asked when the agent was to

call and where the claimant would be, made a memorandum of it, attached it to the claim and put it in the agent's box in the company's office.

The defendant's testimony also tends to show that while the agent did not get the memorandum the young lady clerk made of the claim and attached to the policy, he did get the policies and book; and he forwarded to the defendant's home office in New York City, the policies, book, proof of death and claim he made out for and on behalf of Warren Crockett for the amounts due under these policies; that the officer in New York City, who considered the claim under these policies, did not have notice or knowledge of the claim made for the mother; had only before him the claim of Warren Crockett; which claim he approved: and the defendant paid the amount of the policies to Warren Crockett. The policies, book and Crocketts receipt were produced in Court.

The mother, Eliza Dorsey Messick, died before suit, and Miss Robinson was appointed administratrix of her personal estate; and as such became the assignee of the insured, of whose personal estate Miss Robinson was also appointed administratrix, and as such, by an order of the Orphans Court, assigned the insured's claim under the second policy to Miss Robinson as administratrix of the mother's estate; a certified copy of which order of Court is the evidence to be supplied under C, an office copy of which, not certified, was used in lieu during the trial under the agreement above named.

Miss Robinson, as administratrix of the mother and an assignee of the insured, is the plaintiff.

On this evidence defendant's counsel contended, with very great skill and force, that payment to Warren Crockett of the amount due under each policy, was made under the "facility of payment clause above named," that it. with the defendant's production of the policies, premium receipt book and Crockett's receipt, is an absolute bar to the plaintiff's recovery on the policies.

The facility of payment clause has been recognized by the Court of Appeals in Fitzgerald's case, 133 Md. 619, as well as by the Courts of Last Resort in many of the United States; but it does not authorize a directed verdict for the defendant in this case.

The prayer assumes true, all the above recited evidence tending to support the plaintiff's claim, and all inferences that the law allows a jury to draw therefrom, so that in considering the Court's action, it must be taken to be true, that Miss Robinson properly had the policies and premium receipt book; that she called with them at the company's office in Baltimore; there saw the young lady clerk and the manager; on behalf of Eliza Dorsey Messick then claimed from the defendant the amount of the policies; that Eliza Dorsey Messick was the insured's mother; the named beneficiary in the first policy was a blood relative and one of a class named in the second policy to whom the company could pay—even to the exclusion of a named beneficiary —the policy language being:

"The company may make any payment or grant any non-forfeiture privilege provided herein, to the insured husband, wife, or any *relative by blood* or connection by marriage of the insured."

That the defendant promised such payment to her in about ten days, and that the defendant upon the faith of such promise received from Miss Robinson the policies and book asked for, was given the name and address of the claimant.

From which the jury could find that:

1. The defendant's express promise to pay Eliza Dorsey Messick as testified to by Miss Robinson, or

2. Its implied promise to pay, based upon the young lady's testimony above recited; and the non-production as a witness of the gentleman Miss Robinson named as the manager;

3. The jury could also have found that under the facility of payment clause, Eliza Dorsey Messick *appeared to the company* to be equitably entitled to payment, by reason to have incurred expense on behalf of the insured or for his or her funeral."

Miss Robinson testified that the funeral expenses were to be paid out of the proceeds of the policies—and that she did pay one hundred and forty dollars on account thereof.

The doctrine of estoppel presents another reason why a directed verdict could not have been had. Miss Robinson testified she gave the policies and book to the defendant solely on faith of its promise to her to pay; but for which she would not have given them up; under such circumstances the defendant, after making such a promise, and obtaining on the faith of it, the policies and book, could not disregard it and pay to anyone else the amounts due under the policies and absolutely shield itself behind the facility of payment clause. Carmine vs. Bowen, 104 Md. 198, at 203-204.

While the facility of payment clause in the policies gave the defendant the absolute right to decide between the claims of Eliza Dorsey Messick and of Warren Crockett, it did not allow the company to obtain from the mother's representative the policies and book, upon either an express or implied promise to pay, or a promise that her claim would be noted and considered, and then without giving the slightest consideration to such promises and claim, pay without notice the amount due under each policy to the very person the defendant was advised not only might make a claim, but was not entitled to the proceeds of the policies.

While the claim makes defendant's decision final, before making it the defendant must consider all claims of which it had notice, and decide which among them appeared to it to be equitably entitled, then and then only is the decision final.

The motion will be overruled.